[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
In this civil action the Town of Lincoln (hereinafter "the Town") seeks judicial review under G.L. 1956 (1993 Reenactment) §42-35-15 of a Decision of the Liquor Control Administrator (hereinafter "the Administrator"), which granted the application of Cal-Scott Enterprises, Inc. (hereinafter "Cal-Scott") for a Class B-L liquor license with certain restrictions on March 2, 1993. This action was commenced on March 16, 1993. The record of proceedings before the Administrator was certified to this Court on May 18, 1993. Briefing was completed on September 15, 1993. The case was assigned to this Justice for decision on October 21, 1993.
I.
On September 1, 1992 Cal-Scott applied to the Town's Board of Licensing Commissioners pursuant to § 3-5-15 for a Class B license, limited to the sale of malt and vinous beverages (beer and wine), as described in § 3-7-7, to be located within the Lincoln Mall. On October 20, 1992 the Town Board held a public hearing on the application as required by § 3-5-17. The applicant presented evidence that it needed the license to succeed economically as an Original Riccotti's Sub and Deli Shop in the Lincoln Mall. The Board was concerned that the licensee proposed to operate adjacent to a place in the mall where young people congregated and that the applicant had not made adequate provisions against the taking out of bottled beverages because of a lack of table service and for adequate policing within the proposed establishment. The Board also expressed a concern with "another B-L license." The Board ultimately voted unanimously to deny the application.
The Board gave no other reasons for its decision than the "concerns" noted. No reference is made in the record of the Board's proceedings to any limit or cap on the number of Class B limited licenses authorized by any Town Ordinance or regulation. It may be that there is no such reference because the Board does have jurisdiction to enlarge the limit or lift the cap to allow the granting of a license beyond any limit it has previously set under § 3-5-16. It is clear nonetheless from the record that the Board denied the application because of the proposed location and manner of operation and not because of any defect in the character of the principal in the corporate applicant.
The applicant claimed an appeal on October 27, 1992 from the Town's decision under § 3-7-21 to the Administrator. The Administrator scheduled a hearing de novo on the application on December 7, 1992. At the hearing the Town presented as its only witness the Town Clerk who is also the Clerk and record-keeper of the Board. She identified the original application and the applicant. The principal officer of the corporate applicant was known to her to be the holder of another Class B license in the Town and enjoyed a good reputation according to the witness. She also identified the minutes of the October 20, 1992 meeting of the Board during which the application was denied. The proposed location of the licensed business in the mall was next to a video arcade, across from a cinema and in the vicinity of a comic book shop. The Administrator intervened to assert that she had personal knowledge of the location of the cinema, the arcade and the proposed location of the applicant's licensed business.
There was extensive examination of the witness and colloquy among counsel and the Administrator regarding a "cap" on the number of licenses authorized by the Board. The Town Clerk testified without contradiction that in November 1991, when licenses in the Town were renewed, the number of licenses in Class B, limited, was capped at seven. The Board thereafter would consider whether or not to remove the cap each time it received an application for a license. According to the witness the Board would apply the same criteria to removing the cap as it would to granting an application. She testified at length as to the considerations of the Board generally when considering an application, and the particular concerns of the Board with respect to the application in issue.
The Administrator determined from the witness that the Board had most recently removed a "cap" in the preceding November. The witness acknowledged that every applicant was heard irrespective of the "cap" on the class of license applied for. The Administrator observed: "So we have a cap and no cap approach." Counsel for the Town frankly observed: "I'll be perfectly blunt with you. I think it affords the Town more of a measure of control. Because I think the State, in establishing the legislation it gives you the right to cap something, says that it's a more difficult burden for the applicant to come in and says there's abuse of discretion. That's the reason. It's a tool, and I think it's a tool provided by the legislation."Transcript, December 7, 1992, p. 38. In further explanation of the Town's use of the "cap" permitted in § 3-7-16, he commented: "And so I don't leave you with a misconception, the lifting a cap is the Town's exercising a prerogative (sic) to impose a cap, which I think places — clouds (sic) the Board with more authority to and, perhaps, more discretion in dealing with these things. That's really the only reasoning behind it. I think the Board applies a reasonable standard and that's the best they do in considering both the application and the cap question at the same time." Id. at p. 40.
Mr. Walter J. Scott, a Ph.D. in rehabilitative medicine, testified as sole stockholder of the applicant that he has owned restaurants as a hobby since he was seventeen. He has owned approximately twelve restaurants at various times in addition to several he described to the Administrator as being currently controlled by him. He testified he needed to sell alcoholic beverages at his proposed location in the Lincoln Mall in order to make money. This witness testified in voluminous detail as to the care his management would exercise to prevent under-age consumption of alcoholic beverages served at his place of business. Mr. Scott read from a liquor control policy issued by him for the applicant which specified strict control measures regarding the serving of alcoholic beverages. This policy statement was received by the Administrator as Cal-Scott's Exhibit B. The policy statement had not been, however, presented to the Town Board at its hearing on October 20, 1992.
The Administrator made the following findings of fact:
 "1. That the applicant, Cal-Scott Enterprises, is a fit and suitable applicant in terms of being qualified and otherwise experienced in the operation of an alcoholic beverage establishment based upon his prior record.
 2. That the proposed location at the Lincoln Mall for the licensed premises is properly zoned and otherwise capable of and willing to accommodate the license sought.
 3. That the applicant's license presentation as evidenced on December 7, 1992, established compliance with minimal reasonable criteria upon which to believe that the applicant could and would operate his alcoholic beverage establishment properly in accordance with law under a B-L alcoholic beverage license.
 4. That the applicant's proposed list of restrictions are reasonable and proper for the orderly and safe operation of an alcoholic beverage establishment under a B-L license.
 5. That the issues of health, safety, and welfare evidenced by the Town are reasonable and proper issues to be addressed through appropriate enforcement procedures to be established by this office and by the Town Council of the Town of Lincoln sitting as a Board of License Commissioners.
 6. That the applicant has evidenced sufficient attention and ability to this office to warrant the issuance of a Class B-L liquor license under restrictions as set forth in this decision by this office and by the Town of Lincoln.
 7. That based upon the fact that the present establishment is not owned and operated by "Ricotti's", this office finds as a matter of fact that it is not a chain establishment as set forth in Rhode Island General Laws § 3-5-11. In so finding, the Administrator finds as a matter of fact that there is no evidence to conclude that any other "Ricotti's" is owned or operated by the applicant nor is the establishment similar to or of such a nature as to be considered to be a chain in tandem with the establishment presently owned by the applicant in the Town of Lincoln and otherwise known as the "Pasta Connection"."
Based on those findings the Administrator granted the application with the following restrictions:
 "1. That the Class B-L liquor license shall be granted to be operated from the period of not earlier than 11:00 a.m. on each and every business day that the applicant is entitled to do business and shall terminate, at least insofar as the service of beer or wine, not later than 9:00 p.m. on each and every day the applicant shall be entitled to serve wine and/or beer.
 2. The applicant shall be required to comply with each and every restriction set forth in his memorandum to this office, said restrictions to be incorporated as a restrictions of record on the license.
 3. The applicant shall be solely and primarily responsible for any costs associated with the reasonable supervision and control of alcoholic beverages in and about the establishment known as The Dream Machine and the General Cinema located within Lincoln Mall.
 4. That the matter shall be remanded back to the Town Council of the Town of Lincoln to review these restrictions and to place such other reasonable and proper restrictions upon this license as the Town shall determine in its experience to be just and proper."
II.
The plaintiff argues that the Administrator may not as a matter of law grant any Class B, limited, licenses in the Town of Lincoln beyond the limit fixed by the Town. The Town points to the express language of § 3-5-16: "The department of business regulation shall have the right and power to limit the number of licenses of each class; provided, however, that the limit shall not exceed the maximum number, if any, of any class of license that is fixed by the licensing boards within their respective towns or cities; . . ." The language is as clear-cut a limitation of the power of the State as could be legislated. Our Supreme Court has recognized that limitation in Beachwood, Inc. v.Liquor Control Administrator, 84 R.I. 130, 122 A.2d 142 (1956), which is precisely in point.
The Administrator's decision offers no rationale for a departure from the clear holding in the Beachwood, Inc. case. The Administrator may not agree with the Town's use of its statutory power to set and remove caps as a way to elude the Administrator's jurisdiction. She dismissed it during the hearing as a policy of "cap and no-cap." But, she cannot disregard it.
Of particular significance is the point in Beachwood, Inc.
that the Supreme Court affirmed a decision of a predecessor in the Administrator's office. The Supreme Court quoted with approval that prior Administrator as follows: "There is no provision in the law which prevents a Local Board from raising or lowering that maximum. Were the Administrator to grant this application, he would in effect, be raising the maximum of Class B licenses in the Town of Narragansett from twenty to twenty-one such licenses. This would be contrary to the provisions of [§3-5-16]. It would be contrary to the previous expressed policy of the Administration to urge Local Boards to limit the number of licenses in their Cities or Towns." 84 R.I., at 131-32. Perhaps, that policy has changed. If so, the Administrator should say so.
Cal-Scott's argument that the Town failed to prove the existence of a cap which limited the granting of this license is not well taken. First, Cal-Scott is the applicant for a new license. It enjoys no statutory presumption of entitlement to a license, as does an applicant for renewal of an already issued license. See Beacon Restaurant, Inc. v. Adamo, 103 R.I. 698, 705, 241 A.2d 291, 294 (1968). Hence, it has no right to a license to sell alcoholic beverages. As an applicant it has the burden to prove not only its suitability to be licensed and that its licensing will not violate any public interest, it must also demonstrate that there does exist a license for which it is applying.
Although Tedford v. Reynolds, 87 R.I. 335, 141 A.2d 264
(1958) does shift the burden of proof to the Town, which asserts it has limited the number of a class of licenses, that case does not aid these defendants. In that case the Administrator had found as a fact from the record that that Town had not limited the number of Class B licenses within its jurisdiction by adopting a general resolution not to grant any more such licenses. In this case the Administrator has made no finding whatever on a dispositive issue of fact and law, raised by the Town at the hearing and in its memorandum after the hearing. She simply ignored the matter entirely in her decision and order.
Second, the record is clear from the uncontradicted and unimpeached testimony of a competent witness that the Town had categorically fixed a numerical limit of seven on the number of Class B limited licenses within the Town. There is no factual dispute over the proposition that it would be necessary to remove or lift that limit in order to grant this application.
The defendant Cal-Scott argues that, because the Town reserved the right to remove or lift the limit, there was, in fact, no limit at all. In the absence of any such specific finding by the Administrator, that argument cannot be persuasive. Although § 3-7-21 has been held to vest authority in the Administrator to hear applications for beverage licenses denovo on appeal from denials by local licensing boards and the Administrator has been described as a "superlicensing board."Board of Police Commissioners of the City of Warwick v.Reynolds, 86 R.I. 172, 177, 133 A.2d 737 (1957), the Administrator's plenary jurisdiction over alcoholic beverage licenses does not relieve her from her fact-finding responsibility under § 42-35-12. This Court has no alternative other than to conclude that the Administrator overlooked or misconceived patently material evidence. Accordingly, this Court is not bound by § 42-35-15 to defer to the Administrator's fact-bound conclusions. The Court finds that there was in fact a limit on the number of Class B-L licenses permitted in the Town at the time of this application. Granting this application would violate that limit.
III.
The Administrator's decision displays commendable sensitivity to the local concerns of the Board and the Town. The Administrator chose to address those concerns by imposing stringent restrictions on the applicant's method of operation and has invited the Town to impose such others as the Town might feel appropriate. This Court is not qualified to substitute its judgment for that of the Administrator on those matters. In her attempt, however, to address those concerns through restrictions on the license rather than by a refusal to grant the license she has exceeded her jurisdiction under the Beachwood, Inc. case.
The Court finds that the plaintiff's appeal was not frivolous. It raised serious questions of fact and law, which were resolved in its favor. Cal-Scott's counterclaim is therefore denied and dismissed.
The decision of the Administrator will be vacated and the decision of the Board will be reinstated. The plaintiff will present a form of judgment to be entered on notice to the defendants.