Dr. Lee H. ARNOLD, in his capacity as
Director, Rhode Island Department
of Labor and Training

v.

**RHODE ISLAND DEPARTMENT OF
LABOR AND TRAINING BOARD OF
REVIEW and Gail Adler et al.**

No. 2001–237–M.P.

Supreme Court of Rhode Island.

March 26, 2003.

Valentino D. Lombardi, for Plaintiff.

Marc B. Gursky/William G. Brody, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, and SHEA, (RET.), JJ.

## OPINION

WILLIAMS, Chief Justice.

This case came before the Court on a petition for certiorari filed by Dr. Lee H. Arnold (Dr. Arnold or director) and concerns the proper calculation of attorney's fees to be awarded pursuant to G.L.1956 § 28–44–57(b). Doctor Arnold, in his capacity as Director of the Rhode Island Department of Labor and Training (department), asks us to review a District Court order that he pay $48,100 in attorney's fees to Gursky Law Associates (Gursky) for its representation of 962 individuals in a consolidated appeal before the Department of Labor and Training Board of Review (board). For the reasons set forth herein, we grant the petition for certiorari and quash the order of the District Court, to which we remand the case for the purpose of recalculating attorney's fees in accordance with our decision.

## I

### Facts and Travel

This case has its genesis in a 1998 labor dispute between Women and Infants Hospital (hospital) and 962 of its employees (claimants). After a one-day strike and subsequent twenty-four day lockout, claimants submitted separate claims for unemployment benefits, which the director granted. In total, claimants collected $705,690.40 in benefits before returning to work. The hospital appealed the director's award of benefits to the board. Pursuant to § 28–44–45, the board consolidated the appeal and Gursky represented claimants in the matter. Before the appeal was heard, all claimants had returned to work and no longer were collecting benefits. The board ultimately affirmed Dr. Arnold's decision and the hospital unsuccessfully appealed that issue to the District Court.

Thereafter, claimants filed a claim for attorney's fees pursuant to § 28–44–57 for Gursky's services in the consolidated appeal before the board. Section 28–44–57(b) requires the director to pay a claimant's attorney's fees in the amount of 15 percent of the benefits at issue in the appeal, but not less than $50. In response to claimants' request, Dr. Arnold issued a check to Gursky for $50. The claimants appealed Dr. Arnold's calculation of attorney's fees to the board.

The board affirmed Dr. Arnold's determination that there were no benefits at issue before the board because "claimants had been paid all of the benefits for which they had made application, * * * no repayment of benefits were being requested and no applications for benefits were pending * * *." The board, however, disagreed with Dr. Arnold's application of the statute's requirement that attorney's fees be at least $50. Rather, the board concluded that Gursky was entitled to $50 for each of the 962 claimants, for a total of $48,100. Doctor Arnold appealed and claimants cross-appealed to the District Court, which affirmed the board's decision in toto. Thereafter, we issued a writ of certiorari.

## II

### Standard of Review

Our review of the board's decision on a writ of certiorari is governed by the standards set forth in G.L.1956 § 42–35–15 of the Administrative Procedures Act (APA). *See Berberian v. Department of Employment Security, Board of Review,* 414 A.2d 480, 482 n. 2 (R.I.1980) (describing that

our review of a decision of the board on a writ of certiorari is governed by the APA whether the petition for the writ is filed pursuant to § 28–44–55 or § 42–35–15). Pursuant to § 42–35–15(g), this Court may:

> "affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error or law;
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

■ On certiorari, this Court defers to a fact-finder's factual determinations that are made during an administrative proceeding and are supported by legally competent evidence. *See Rhode Island Temps, Inc. v. Department of Labor and Training, Board of Review,* 749 A.2d 1121, 1124 (R.I.2000). Legally competent evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." *Id.* at 1125 (quoting *Center for Behavioral Health, Rhode Island, Inc. v. Barros,* 710 A.2d 680, 684 (R.I.1998)). We are free, however, to conduct a *de novo* review of determinations of law made by an agency. *See Johnston Ambulatory Surgical Associates, Ltd. v. Nolan,* 755 A.2d 799, 805 (R.I.2000).

## III

## Subject Matter Jurisdiction of the Board

Doctor Arnold first argues that the board did not have subject matter jurisdiction to review his determination of attorney's fees. Pursuant to G.L.1956 § 28–43–14, a "person aggrieved by any *decision* of fact or law by the director with reference to * * * any * * * matter for which an appeal is not otherwise provided in chapters 42 [through] 44 of [title 28], may * * * appeal to the board of review * * *." (Emphasis added.) According to Dr. Arnold, in awarding attorney's fees, he is performing a ministerial function rather than a "decision" from which an appeal may be filed.

■ If the action is deemed a ministerial function, the only remedy available to claimants is "the invocation of the extraordinary writ of mandamus," which was not sought here. *Beacon Restaurant v. Adamo,* 103 R.I. 698, 704, 241 A.2d 291, 294 (1968). A ministerial function is one that is to be performed by an official in a prescribed manner based on a particular set of facts " 'without regard to or the exercise of his own judgment upon the propriety of the act being done.'" *Id.* at 703, 241 A.2d at 294. Conversely, if Dr. Arnold's action is deemed to be a "decision," that action is subject to the appeals process provided for § 28–43–24. A "decision" as the term is used in § 28–43–14 contemplates a marriage of the director's factual findings and legal conclusions that affects an employer or person.

■ The payment of attorney's fees under § 28–44–57(b) involves both a decision-making process and a ministerial function. Although the determination of the appropriate amount of attorney's fees to be paid

pursuant to § 28–44–57(b) depends on a mechanical application of the statute, the calculation is not made unless and until the director determines how the fee provision applies. Presumably, the calculation of benefits at issue before the board likely involves little more than a cursory review of the record. Nevertheless, this case demonstrates that the determination of whether there are benefits at issue as contemplated under the statute constitutes a mixed question of fact and law. Further, Dr. Arnold's conclusion about how to apply the $50 minimum fee in consolidated cases constitutes a legal decision based on his interpretation of the statute; a quintessential legal conclusion. *See, e.g., New England Expedition–Providence, LLC v. City of Providence*, 773 A.2d 259, 262 (R.I. 2001). Accordingly, although it is unlikely that the calculation of the appropriate fee would evolve into a disputed issue, it is a decision nonetheless.

█ Once the director has determined how fees should be calculated, the act of tendering payment based on that determination becomes ministerial. Here, Dr. Arnold has tendered payment, and the crux of this appeal depends upon how the fee formula should have been applied, not whether the fee should be paid. Thus, claimants appropriately invoked the statutorily provided appellate process by appealing Dr. Arnold's decision to the board.

## IV

### Attorney's Fees Under § 28–44–57(b)

The purpose behind the Employment Security Act is to "lighten the burden which now falls on the unemployed worker and his or her family." G.L.1956 § 28–42–2. To that end, the Legislature has provided for a claimant's attorney's fees to be paid by the director in cases that are appealed to an appeals body other than a court of law. *See* § 28–44–57(b). In that situation, "the attorney is entitled to a counsel fee of fifteen percent (15%) of the amount of benefits at issue before the appeals body but not less than fifty dollars ($50.00), which shall be paid by the director out of the employment security administrative funds * * *." *Id.*

Two issues remain before this Court. The first is whether there were any benefits at issue before the board as contemplated under § 28–44–57(b). Second, if there were no benefits at issue before the board, the question becomes whether the $50 minimum attorney fee must be paid for each of the 962 claimants that Gursky represented in the hospital's consolidated appeal or whether the consolidation of the appeals limits the director's duty to pay attorney's fees under the statute to $50 in total.

█ The resolution of this appeal depends upon questions of statutory interpretation. "When construing a statute 'our ultimate goal is to give effect to the purpose of the act as intended by the Legislature.'" *Oliveira v. Lombardi*, 794 A.2d 453, 457 (R.I.2002) (quoting *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I.2001)). This Court must literally interpret a clear and unambiguous statute and attribute the plain and ordinary meanings to its words. *Solas v. Emergency Hiring Council of Rhode Island*, 774 A.2d 820, 824 (R.I.2001). When examining an unambiguous statute, "there is no room for statutory construction and we must apply the statute as written." *Id.* (quoting *State v. DiCicco*, 707 A.2d 251, 253 (R.I.1998)). We ascertain the Legislature's intention behind an ambiguous statute by considering "the entire statute, keeping in mind its nature, object, language and arrangement." *LaPlante v. Honda North America, Inc.*, 697 A.2d 625, 628 (R.I.1997) (quoting *Algiere v. Fox*, 122 R.I. 55, 58, 404 A.2d 72, 74

(1979)). Although this Court is the ultimate arbiter of law, we give deference to an agency's interpretation of an ambiguous statute that it has been charged with administering and enforcing, provided that the agency's construction is neither clearly erroneous nor unauthorized. *See In re Lallo,* 768 A.2d 921, 926 (R.I.2001). Our ultimate interpretation of an ambiguous statute, however, is grounded in policy considerations and we will not apply a statute in a manner that will defeat its underlying purpose. *See Pier House Inn, Inc. v. 421 Corp.,* 812 A.2d 799, 804 (R.I. 2002).

In this case, claimants went on a one-day strike on December 22, 1998. When they attempted to return to work the next day, they were locked out. Based on their status as locked-out workers, claimants applied for, and were granted, unemployment benefits. The hospital appealed the director's award of benefits to claimants on January 11, 1999. The lockout continued until January 15, 1999 and claimants returned to work on January 20. By that time, claimants had collected a total of $705,690.40 in benefits. Eventually, the appeals were consolidated and hearings were held on February 3 and 17.

The claimants argue that the $705,690.40 that they collected in benefits constitutes the amount of benefits at issue before the board. Conversely, the director contends that there were zero benefits at issue because, by the time the hearings were conducted, claimants no longer were collecting benefits, and any benefits already paid to them were unrecoverable regardless of the outcome of the board's decision. Based on the facts of this case, however, we reject both parties' arguments and hold that claimants had five days' worth of benefits at issue while the case was before the board.

■ Both parties' arguments are premised on the assumption that the hearing date constitutes the only relevant time frame from which a calculation of "benefits at issue" may be made. To the extent that the director's assumption is the product of statutory ambiguity, we reject this interpretation as unauthorized and clearly erroneous. The statute does not mention a hearing date for purposes of calculating attorney's fees. Rather, the Legislature has taken a broader approach to the matter. By failing to specify any intention that a case is "before the board" only when a hearing is held, logic and language dictate that a case is properly deemed to be before the board at the time the appeal is filed. It is at that point that an attorney must begin preparing a case to be presented to the board in an effort to protect his or her client's rights to any future benefits. Further, efforts taken by the parties to resolve the case will be directed to the appeals body. Finally, any actions that will be taken with respect to a claimant's benefits at that point will be taken by the appeals body. Thus, a case and any benefits at issue are before the appeals body when the appeal is filed.

Any benefits that had already been paid to claimants pursuant to the director's decision before the appeal was filed were "not recoverable in any manner." Section 28–44–40. Thus, any benefits that were paid based on the time before the appeal was filed were never at issue before the board. Accordingly, "benefits at issue" must be measured from the period beginning on the date the appeal is filed and extending prospectively until the claimant's eligibility for benefits expires. When the lockout ended on January 15, 1999, claimants were ineligible to collect benefits under the director's award from that point forward. Thus, Gursky is entitled to 15 percent of the benefits that were paid to claimants based on the five days they were locked out during the time when the appeal was pending before the board.

We reject claimants' argument that the hospital had benefits at issue before the board. Unless the context clearly requires otherwise, benefits are defined as "the money payable to an individual as compensation for his or her wage losses due to unemployment * * *." Section 28–42–3(4). Obviously, the hospital was never in the position of receiving compensation for lost wages. Thus, a literal application of the clear and unambiguous definition of benefits precludes us from concluding that the hospital could have "benefits" at issue before the board. Moreover, even if we were to conclude that the hospital's potential liability for reimbursement constituted benefits, logic would preclude us from calculating attorney's fees based on potential liability of a party not represented by that attorney.

Because 15 percent of the total benefits that claimants collected based on their unemployment between January 11 and 15, 1999, certainly will be more than $50, we need not address the relationship between the consolidation of appeals and the $50 minimum fee provision in § 28–44–57(b).

### Conclusion

For the reasons set forth above, we grant the petition for certiorari and quash the District Court's order. The case is remanded to the District Court with instructions to calculate Gursky's attorney's fees in the amount of 15 percent of the benefits that the claimants collected based on their unemployment between January 11, 1999, and January 15, 1999. The papers in the case are remanded to the District Court with our decision duly endorsed thereon.

Justice FLANDERS did not participate.