DECISION
The matter before the Court is the appeal of Nathan Chattman ("plaintiff"), brought pursuant to the Law Enforcement Officer's Bill of Rights, G.L. (1956) § 42-28.6-12. The plaintiff, a former officer of the Woonsocket Police Department ("Department"), filed this complaint against the City of Woonsocket ("City") and the Hearing Committee ("Committee"), (collectively "defendants"). The plaintiff's appeal concerns the Committee's decision to sustain the charges and punishment recommended by the Chief of Police for the City, Herve B. Landreville ("Chief Landreville"). After reviewing the entire record, the Court affirms the decision of the Committee and dismisses the complaint.
 Facts and Travel
The plaintiff was a police officer for the City for seventeen years. In March 2002, Chief Landreville sent notice to the plaintiff informing him that his employment with the Department was thereafter terminated by reason of his numerous violations of Department Rules and Regulations. In fact, Chief Landreville had charged the plaintiff with thirty-one violations of the Department Rules and Regulations. The charged violations included the plaintiff's long standing abuse of sick time, untruthfulness in regard to sick claims, and neglect of duty.
More specifically, the Chief stated in his notice to the plaintiff that the plaintiff had missed one-hundred and seventeen days in 2001 and eighteen days of the first two months of 2002 due to alleged ailments. Specific instances of sick time abuse were contained in the charges. In early 2002, the Department commenced surveillance of the plaintiff and documented its findings. The Department documented numerous instances in which the plaintiff called in sick for his midnight to eight a.m. shift, but arose early the next day to attend classes at the Bancroft School of Massage in Worcester, Massachusetts and/or Pesare Karate School. The plaintiff would then fail to call the Department that night and report that he was fit for duty before his scheduled shift, only to arise again the next day and return to his extracurricular activities. The Chief charged that the activities engaged in by the plaintiff after calling in sick were inconsistent with the illnesses that the plaintiff had claimed rendered him unfit for duty.
The Chief further charged that, in violation of Department's Rule regarding the Duty to Obey, the plaintiff had failed to leave proper phone numbers and addresses for the various locations at which he could be reached while recuperating from his alleged illnesses. Specifically, the plaintiff failed to provide his contact information at both the massage and karate schools. The Chief also charged that the plaintiff was untruthful in his Garrity interview of February 2002. At the interview, the plaintiff was questioned by Lieutenant Dennis G. Perron ("Lt. Perron") and Captain Gary Chamberland ("Capt. Chamberland") regarding his whereabouts on certain days. At issue was the plaintiff's failure to disclose to Lt. Perron and Capt. Chamberland that he had attended massage and karate classes on the days in question.
Seeking redress for his termination, the plaintiff timely exercised his right to a hearing pursuant to G.L. (1956) § 42-28.6-4. The hearing was held by the Committee on May 29, 2002. The Committee issued a decision in September 2002, finding the plaintiff guilty of twenty of the thirty-one charges and upheld Chief Landreville's penalty of termination. The plaintiff now appeals the Committee's decision to this Court.
 Jurisdiction and Standard of Review
The Court has jurisdiction over this matter pursuant to G.L. (1956) § 42-28.6-12. "The Law Enforcement Officers' Bill of Rights . . . is the exclusive remedy for permanently appointed law-enforcement officers who are under investigation by a law-enforcement agency for any reason that could lead to disciplinary action, demotion, or dismissal." City ofEast Providence v. McLaughlin, 593 A.2d 1345, 1348 (R.I. 1991) (citingLynch v. King, 120 R.I. 868, 870 n. 1, 391 A.2d 117, 119 n. 1 (1978)). Pursuant to §§ 42-28.6-1 and 42-28.6-4 of the act, an officer facing departmental charges may request a hearing before a hearing committee composed of three active law enforcement officers. The hearing committee has broad discretion to accept, reject, or modify in whole or in part the sanctions that the charging authority recommends. Culhane v. Denisewich,689 A.2d 1062 (R.I. 1997) (citing State Department of EnvironmentalManagement v. Dutra,1211 R.I. 614 (R.I. 1979)).
General Laws (1956) §§ 42-35-15 and 42-35-15.1 deem these hearing committees administrative agencies. This Court reviews agency decisions pursuant to § 42-35-15(g):
 "The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision, this Court may not substitute its judgment for that of the agency with respect to the credibility of witnesses or the weight of evidence concerning questions of fact. Centerfor Behavioral Health, R.I., Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency's decision. NewportShipyard v. R.I. Comm'n for Human Rights, 484 A.2d 893, 897 (R.I. 1984). Substantial evidence is that which a reasonable mind might accept to support a conclusion, Id. (quoting Caswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (1981)), even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dep't. ofEmployment Sec., 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v.Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981). Questions of law, however, are not binding on a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts of Interests Comm'n, 509 A.2d 453, 458 (R.I. 1986). If competent evidence supports the agency's findings and conclusions, this Court is required to uphold them. R.I. Pub. Telecomms.Auth. V. R.I. Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994). "Legally competent evidence is `relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.'" Arnold v. RhodeIsland Dep't of Labor and Training Bd. of Rev., No. 2001-237-M.P. (AA 00-82), R.I. Supreme Ct., slip op. at 3, 2003 R.I. LEXIS 71* (March 26, 2003) (quoting Center for Behavioral Health, Rhode Island, Inc. v.Barros, 710 A.2d 680, 684 (R.I. 1998)).
 The Decision of the Committee
a. Violations of the Sickness and Malingering Rule
The Committee sustained charges 6-9, 11, and 12, which refer to violations of the Department's Sickness and Malingering Rule. The Department's Sickness Malingering Rule prohibits officers from feigning sickness and/or deceiving the Department as to the officer's actual condition. The Committee concluded the plaintiff's participation in various activities-karate, massage school, father/daughter dance-was inconsistent with the illnesses from which he reportedly suffered. In reaching that conclusion, the Committee considered surveillance reports, sick slips, charts submitted by the City, medical documents submitted by the plaintiff, and the testimonies of the plaintiff, Capt. Chamberland, and Lt. Perron. The Committee used the "reasonable person" standard in reaching its conclusion.
The plaintiff first argues that the Committee erred in concluding that the activities he engaged in were inconsistent with the ailments from which he was suffering. The plaintiff contends that the City failed to introduce any evidence tending to prove that any of the activities he engaged in were in fact inconsistent with being an ill individual. Thus, the plaintiff states that the record is devoid of evidence contradicting his testimonial explanations for his sicknesses. The plaintiff concludes that the Committee failed to give adequate weight to both the medical documents he submitted and to his testimony regarding his medical issues. Finally, the plaintiff asseverates that the Committee came to its conclusion by improperly stacking weak inferences.
The City counters that the Committee, as the factfinder, weighed the evidence and the credibility of witnesses, in part, by the proper and reasonable employment of its members' common sense. Accordingly, it then drew reasonable inferences from the facts before it and concluded that the plaintiff's activities were inconsistent with the illnesses from which he allegedly suffered. As set out below, the Court finds that substantial evidence exists for the Committee's decision.
The Committee considered the documents and testimony presented by the plaintiff. The Committee concluded that said evidence consisted of unauthenticated and ineligible documents and incredible testimony. The testimony given by the plaintiff proceeded, in general, as follows. The plaintiff called in sick for his midnight to eight a.m. shift with such ailments as chest pains, pink eye, headaches, urinary tract infections, and vomiting. When morning came, the plaintiff testified that he felt better and therefore went to massage classes, karate, and even a father/daughter dance. When it came time for the plaintiff's shift that night, the plaintiff testified that he suddenly felt ill again. This pattern was repeated ad nauseam.
The Court notes that weighing the evidence lies exclusively within the province of the factfinder, and this Court has no power to substitute its judgment for that of the Committee. Barros, 710 A.2d at 684. This Court's task is to determine whether substantial evidence exists for the Committee's decision and not to review the case de novo. Berberian, 414 A.2d at 482.
The Committee decided not to accord much weight to the testimony of the plaintiff and his explanation of the relationship between his ailments and his activities. Accordingly, by relying on the reliable, probative, and substantial evidence before it, the Committee concluded that the plaintiff's engagement in the activities described above was inconsistent with the illnesses from which he was supposedly suffering. For example, the plaintiff called in sick to work with chest pains, but then went to a karate tournament. Such incident was not isolated, but rather indicative of an on-going pattern. Therefore, despite the plaintiff's assertion that there was no evidence showing that his activities were inconsistent with illness, "[l]ogic, probability, common sense, [and] human judgment, point unerringly in the opposite direction." State v. Medeiros, 599 A.2d 723, 726 (R.I. 1991) (citation omitted). Therefore, the reasonable inferences drawn from the facts by the Committee through the use of its members' common sense, were entirely justified. See Adams v. Uno Restaurants,Inc., 794 A.2d 489, 493 (R.I. 2002); State v. Milette, 727 A.2d 1236, 1241 (R.I. 1999). After reviewing the entire record, it is clear to this Court that reliable, probative, and substantial evidence exists for the Committee's decision that the plaintiff violated the Department's Sickness and Malingering rule as to charges 6-9, 11, and 12.
b. Violations of the Duty to Obey
The Committee also sustained charges 13-16 and 18-20, which deal with the plaintiff's failure to give to the Department the telephone numbers for the various locations at which he could be reached while unfit for duty. Specifically, since the plaintiff, while still considered unfit for duty, spent significant time at massage school in Worcester, Massachusetts and at karate class, the Committee concluded that he should have supplied those numbers and addresses to the Department. The Department's Absent from Duty policy states:
 "Officers calling out sick or injured on Duty [sic] shall also supply the Supervising Officer With [sic] a [sic] address and phone number where he/she Is [sic] recuperating from such illness or injury in order That [sic] he may be contacted at any time the need Arises [sic]."
Woonsocket Police Dep't., Absent from Duty, G.O. 00-03, § III(3) (May 2, 2000) (Joint Exhibit 3) ("general order").
The plaintiff contends that the general order is vague in that it does not clearly articulate whether the absent officer must be physically present at those locations or whether there exist time/location exceptions from the rule, such as going to the hospital or pharmacy. The plaintiff states that the only places for which a phone number must be given are those locations where the officer may be expected to timely receive a message so that a timely reply may be given. Finally, the plaintiff pleads that he did not believe going to massage class or karate lessons during off duty hours violated the order.
The Committee specifically cited the plaintiff's failure to give the addresses and phone numbers of the Bancroft School of Massage and Pesare Karate as reason to sustain the Department's charges. It is uncontested that the plaintiff spent substantial periods of time at those locations on days when he was considered technically unfit for duty. For example, the record reflects that on February 7, 2002, the plaintiff spent approximately eight hours at the Bancroft School of Massage and two hours at Pesare Karate. This Court therefore finds that the Committee's decision to sustain charges 13-16 and 18-20 was not affected by error of law or clearly erroneous.
Furthermore, the plaintiff contends that the Absent from Duty policy is vague and therefore violative of due process because it fails to give notice of the parameters of prohibited conduct. The Court notes that the plaintiff failed to provide any case law supporting his contention that the general order violates due process. Concerning the Department's interpretation of the general order, "[i]t is well established `that an agency's construction of its own regulations is entitled to substantial deference.'" Martin v. Occupational Health and Safety Review, 499 U.S. 144, 150 (1991) (quoting Lyng v. Payne, 476 U.S. 926, 939 (1986)).
Here, the Department's interpretation of the general order was reasonable because it required the plaintiff to give his contact information only for places at which he was spending a quantified amount of substantial time. By arguing that the general order is vague, the plaintiff attempts to blur the rather obvious distinction between stepping out to the pharmacy for twenty minutes and spending eight hours at massage school. The record reflects, however, that the plaintiff knew that he would be at the massage classes for very specific and extended periods of time and should the need have arisen, the Department could have reached him there. Therefore, the plaintiff should have known that the Department's Absent from Duty policy required him to provide the Department with said contact information. Regarding only this general order, the prohibited conduct was not the plaintiff's going to massage class, but rather his failure to inform the Department that he could be reached there. The general order clearly required the plaintiff to provide the Department with the phone numbers and addresses of the karate school and massage school. The Court thus finds that the Department's interpretation of the general order was neither affected by error of law nor in violation of constitutional provisions.
c. The Penalty of Termination
The majority of the Committee agreed to sustain the Department's termination of the plaintiff. The Committee found that the plaintiff demonstrated a complete lack of consideration for his duty, feigned illness, and was untruthful in matters related to the hearing. The Committee thus found that the recommended penalty of termination was merited.
For each violation of the Department's Rules and Regulations, the Department follows sanctioning guidelines that accord a level of punishment to that violation. The Department's sanctioning guidelines define five levels of punishment:
 Level 1: Termination on the first offense[.]
 Level 2: From a two week unpaid suspension to termination. This level shall also include demotion for supervisory officers.
 Level 3: A maximum of a two week unpaid suspension.
 Level 4: A two day unpaid suspension.
 Level 5: A verbal or written reprimand. This level shall also include a suspension of less than two days.
Woonsocket Police Dep't, Rules and Regulations, pt. IV, Disciplinary Code p. 37 (June 2000) (Joint Exhibit 2). Directly following the definitions of the various levels, the sanctioning guidelines state:
 "NOTE: These levels of punishment shall serve a [sic] guide for discipline. Although; [sic] every effort shall be made to adhere to these principle's [sic] the Chief of Police reserves the right to deviate from them in such cases of egregious conduct or extenuating circumstances."
Id. As the language of the guidelines indicates, the Department's sanctioning guidelines outline the Department's policy towards violations of the code of conduct. Furthermore, pursuant to the regulations, the chief of police possesses the right, albeit if there is egregious conduct or extenuating circumstances, to deviate from the guidelines and thus impose different punishment.
The plaintiff charges generally that the Committee's decision to uphold the penalty of termination is arbitrary, capricious, and amounts to an unwarranted exercise of discretion. Namely, the plaintiff argues that standing alone, no single violation of the Department's Rules and Regulations for which he was found guilty merits termination according to the Department's sanctioning guidelines. Thus, the plaintiff concludes that the Committee abused its discretion by upholding the penalty of termination. In that regard, the plaintiff contends that the untruthfulness for which he was found guilty does not merit termination.
Regarding the untruthfulness violations, charges 2-5, the Committee found that at the Garrity interview, the plaintiff's failure to disclose his attendance of both massage and karate classes to Lt. Perron and Capt. Chamberland violated the Department's rules against untruthfulness and malfeasance. More specifically, whereas charge 2 relates to neglect of duty, charges 3-5 deal directly with the plaintiff's violation of the Department's Code of Conduct for truthfulness, see id. at p. 41, Charges and Penalties, Code of Conduct, (17) Truthfulness. For this violation, the sanctioning guidelines recommend punishment Level 2 for the first offense and Level 1 for the second offense. Therefore, even as to the first offense, the chief of police has the discretion to impose a punishment "[f]rom a two week unpaid suspension to termination." Here, there was not one violation but three.
Even though Chief Landreville had discretion to terminate the plaintiff based on the untruthfulness violations, the plaintiff argues that termination was not merited for said charges. The City argues that the plaintiff's omissions were substantial and intentional. Here, the plaintiff attempts to portray his omissions regarding his activities at massage school and karate school as something less than direct lies. The Court, however, deems such verbiage to constitute a distinction without a difference. The Committee determined that the plaintiff's omissions were "willfully and intentionally deceptive," which signals that it did not view the plaintiff's omissions as innocuous as the plaintiff presently portrays them.
In line with his contention that the untruthfulness violations did not merit termination, the plaintiff also contends that Chief Landreville had no authority to deviate from the sanction guidelines because neither egregious conduct nor extenuating circumstances existed. The City argues that when the plaintiff's twenty violations are considered in the aggregate, it becomes clear that the plaintiff's conduct was egregious and that the circumstances merited departure from the guidelines. The Court finds that the plaintiff's argument that the Committee's decision to sustain the recommended penalty was arbitrary and an abuse of discretion is not supported by the evidence of record. Rather, the Court finds that Chief Landreville did not abuse his discretion in determining that the plaintiff behaved in an egregious fashion and, thus, his departure from the guidelines was appropriate. Furthermore, the Committee had reliable, probative, and substantial evidence-three instances of the plaintiff's untruthfulness combined with seventeen other violations-before it to determine that the penalty of termination was warranted.
d. The Proper Standard
The plaintiff argues that the Committee applied the wrong standard in sustaining Chief Landreville's penalty of termination. Specifically, the plaintiff submits that G.L. (1956) § 42-28.6-11 requires the Committee to determine if the sanction is supported by a fair preponderance of the evidence. The plaintiff contends that the Committee found only that the sanction was not without merit, which does not meet the fair preponderance standard.
The City argues that nowhere in the statute or caselaw is a "fair preponderance" standard mentioned or required. Rather, § 42-28.6-11
states:
 "Decisions of the hearing committee.— (a) The hearing committee shall be empowered to sustain, modify in whole or in part, or reverse the complaint or charges of the investigating authority . . ."
Thus, the City concludes that instead of requiring the Committee to uphold the penalty by a "fair preponderance," § 42-28.6-11 gives the Committee broad discretion to accept, modify, or reverse the penalty.
The Rhode Island Supreme Court has held that "[t]he Officers' Bill of Rights . . . authorizes the committee to subpoena witnesses, administer oaths, make findings of fact and, finally, to `sustain, modify in whole or in part or reverse the complaint or charges of the investigating authority . . . .' Section 42-28.6-11. Clearly, then, the Legislature endowed the hearing committee with broad powers to investigate allegations of police misconduct and did not intend that the committee be bound in any way by the recommendation of the charging authority." Lynchv. King, 120 R.I. 868, 878, 391 A.2d 117, 123 (1978); see Culhane v.Denisewich, 689 A.2d 1062, 1064-65 (R.I. 1997) (citing State Dep't ofEnvtl. Management v. Dutra, 121 R.I. 614, 401 A.2d 1288 (1979)). This Court thus finds that the findings and determinations of the Committee in sustaining the penalty neither violated statutory provisions nor constituted an abuse of discretion.
e. The Request for Further Proceedings
The plaintiff also argues that the Court should remand the matter to the Committee for further proceedings. The plaintiff contends that since the Committee stated that it could not give any probative value to the medical documents he submitted because they were unauthenticated and ineligible, he should be given the opportunity to have the records authenticated and clarified.
The City submits that the plaintiff had three chances and over six months to produce the documents and that the plaintiff does not deserve yet another opportunity. The City notes that the documents were requested from the plaintiff on June 12, 2002, but by June 26, 2002, the plaintiff had still not produced the documents, which required further delay of the proceedings until July 12, 2002. The City thus argues that the plaintiff should not be granted more time to submit documents.
 The Rhode Island Supreme Court has held:
 "A remand for further consideration is not a determination that the [agency] is wrong; but it is an indication that the disinterested court, which has reviewed the record, is not satisfied on the basis of that record that the [agency] is right."
Lemoine v. Department of Mental Health, Retardation and Hosp.,113 R.I. 285, 292, 320 A.2d 611, 615 (1974) (quoting State ex rel.Gunstone v. State Highway Comm'n, 434 P.2d 734, 735 (WA. 1967)). This Court is satisfied that the Committee had before it sufficient, reliable, probative, and substantial evidence to reach the correct decision. The plaintiff had from February 2002 through July 2002 to gather and submit the appropriate records. The fact that the records reviewed by the Committee were unauthenticated and ineligible is the fault of the plaintiff, whose burden it was to demonstrate that his substantial rights had been prejudiced by the Committee's decision. SeeRoger Williams College v. Gallison, 572 A.2d 61, 62-63 (R.I. 1990) (concerning an administrative zoning appeal, the Supreme Court noted that the authority to remand should not be exercised by a trial justice to "allow remonstrants another opportunity to present a case when the evidence presented initially is inadequate" and that such remand should be based upon a defect in the proceedings, "which defect was not the fault of the parties seeking the remand"). Therefore, since the Court is satisfied on the basis of the record that the Committee's decision is correct and that the only alleged defect in the proceedings was not the fault of the Committee, the Court denies the plaintiff's request for remand.
 Conclusion
After reviewing the entire record and considering the arguments, this Court affirms the decision of the Committee. This Court finds that the decision of the Committee is supported by reliable, probative, and substantial evidence. Furthermore, the Court finds that the Committee's decision did not constitute an abuse of discretion, was not affected by error of law, and is not arbitrary or capricious. Since the substantial rights of the plaintiff have not been prejudiced, the Court sustains the plaintiff's termination. Counsel are directed to confer and submit to this Court the proper order for entry after notice.