DECISION
Plaintiff/Appellant Barry Holland (hereinafter "Appellant") appeals from a December 15, 2008 decision of the Board of the Employees' Retirement System of Rhode Island ("the Board" or "ERSRI"). That decision affirmed actions taken by the Board's Executive Director to offset disability retirement benefits payable to Appellant by the Board against certain payments made to Appellant by the South Kingstown School Department, and/or its insurer, the Rhode Island Interlocal Risk Management Trust (hereinafter simply "Trust"). The South Kingstown School Department and the Rhode Island Interlocal Trust are non-parties to this appeal. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
The underlying facts in this matter are largely undisputed. Appellant was employed as a maintenance worker with the South Kingstown School Department ("Department") for approximately seventeen years. (ERSRI Dec. at 2.)[1] On or about May 12, 2005, Appellant, driving a school department van, was involved in an automobile accident while working for the Department.Id. As a result of the May 12, 2005 accident, Appellant suffered injuries to his *Page 2 
neck, back, and leg and was unable to return to work. (ERSRI Dec. at 2-3.) Appellant subsequently applied to the Board for an accidental disability pension, and his application was approved on or about November 8, 2006. (ERSRI Dec. at 3.)
From May 12, 2005 to December 11, 2006, Appellant was paid a weekly workers' compensation indemnity benefit of $475.88 pursuant to the Workers' Compensation cause of action he filed with the Workers' Compensation Court, Barry Holland v. South KingstownSchool Department, W.C.C. No. 06-7895, resulting from the injuries he had sustained in his work-related automobile accident.Id. On or about December 20, 2006, a "Final Decree" was entered into between Appellant's counsel and counsel for the Department: "discharging the school department from all liabilityunder the Workers' Compensation Act resulting from injuriessustained by Appellant in the May 12, 2005 automobile accident, inconsideration of payment by the school department to Appellant inthe amount of One Dollar ($1.00)[sic]." Id. (Emphasis added.) On or about December 20, 2006, Appellant also entered into an agreement with the Department, whereby the Department agreed to pay Appellant the sum of $24,960 for eighteen months of medical coverage from the date of the agreement forward and the sum of $3,800 for a so-called "Medicare set aside[,]" plus attorneys' fees and accumulated sick, vacation and longevity pay.Id. at 3-4.
In September of 2007, correspondence commenced between Appellant and the Board regarding the payments received by Appellant from the Department for his work-related injuries. Id. at 4. On October 29, 2007, the Board issued a decision denying Appellant's request to exclude payments made to Appellant per his agreement with the South Kingstown School Department from the offset provisions of G.L. 1956 § 45-21-31. (ERSRI Dec. at 4; Joint Ex. 2.) The Board determined that "monies paid to the Appellant by the Town of South Kingston and/or *Page 3 
its insurer in the amount of $24,960 for eighteen (18) months of future medical coverage and $3,800 for a Medicaid set-aside are payments resulting from injuries sustained by the Appellant in the course of his employment and, as such, are subject to the offset provisions of RIGL [sic] Section 45-21-31." (ERISA Dec. at 2.) The Board re-affirmed its decision on December 20, 2007. (Joint Ex. 3.)
Appellant requested a hearing before a hearing officer, which was scheduled for March 11, 2008. (Appellant's Ex. 1; Letter from Hearing Officer Teresa M. Rusbino, Esq. to Michael A. St. Pierre (Feb. 12, 2008)). Pre-hearing memoranda were submitted by the Board and Appellant (Resp't's Ex. 1; Appellant's Ex. 3), and a hearing was held before Hearing Officer Teresa Rusbino (hereinafter "Hearing Officer") on March 11, 2008, at which time arguments were presented by counsel for Appellant and the Board and testimony was heard from Christine Preston ("Preston"), Senior Claims Representative of the Rhode Island Interlocal Risk Management Trust, and Michael Feeney ("Feeney"), an attorney for the Trust. (3/11/2008 Tr.)
Preston testified that she handled workers' compensation claims for the Trust and was involved in the 2006 negotiations to resolve Appellant's then-pending workers' compensation claim with the Department. (3/11/2008 Tr. at 25:11-27:1.) Preston testified that Appellant was paid $24,960, representing the cost of ongoing family health care coverage for an eighteen month period until Appellant reached the age of sixty-five (65) and became Medicare eligible. (3/11/2008 Tr. at 28:13-29:24.) Preston further testified that had the workers' compensation benefits claim remained open and had Appellant continued collecting workers' compensation benefits while remaining in the employ of the Department, the Department would have continued to cover that health benefit. (3/11/2008 Tr. at 29:8-30:23.) Additionally, Preston testified that the so-called Medicare set-aside of $3800 paid to Appellant "is necessary on all Worker's [sic] *Page 4 
Compensation claims for those injured in the Worker's Comp. forum, particularly when they reach a certain age." (3/11/2008 Tr. at 29:21-23.)
On cross-examination, Preston acknowledged that the Trust initially became involved in settlement negotiations when the Appellant filed a workers' compensation claim, because they determined that the Trust had exposure on the claim. (3/11/2008 Tr. at 39:3-40:21.) According to Preston, the Trust determined that it was unlikely that Appellant would return to work for the Department due to his injuries, and that Appellant would have continued to receive workers' compensation benefits, possibly for the rest of his life if the matter had not been settled. (3/11/2008 Tr. at 39:3-22, 41:4-20.) Preston further acknowledged that neither the $3800 Medicare set-off nor the $24,960 in futuro medical coverage would have been paid to Appellant had he not been injured at work. (3/11/2008 Tr. at 48:20-49:4.)
Feeney testified that the Department was seeking to limit what it perceived as a potentially infinite exposure due to Appellant's potential to collect workers' compensation benefits for the remainder of his life. (3/11/2008 Tr. at 59:13-60:6, 64:7-65:16.) On cross-examination, Feeney discussed the in futuro medical coverage payment to Appellant and testified, in part, that "[T]here had to be some mechanism to allow [Holland] to continue his health care because without being allowed to continue his health care, there would be no settlement. He wasn't going to go and accept the Worker's Comp. settlement package without having the health care resolved. . . ." (3/11/2008 Tr. at 64:14-19.)
On October 20, 2008, the Hearing Officer issued her decision affirming the Board's denial of Appellant's request to exclude the medical coverage and Medicare set-aside payments from the offset provisions of Section 45-21-31. Review of the Hearing Officer's decision by the full Retirement Board was scheduled for December 10, 2008 (Letter from Cay C. Massouda to *Page 5 
Barry Holland (Nov. 18, 2008)), and on that date, argument was presented by counsel for the Retirement Board and counsel for Appellant. (12/10/2008 Tr.) Upon a vote of 8-3, the Retirement Board affirmed the Hearing Officer's decision. Notice of the final denial was forwarded to Appellant and his counsel on December 15, 2008. (Letter from Frank J. Karpinkski to Barry Holland (Dec. 15, 2008)). Appellant filed this appeal pursuant to § 42-35-15 on January 13, 2009.
In addition to the above-described facts, it is important to note that the Appellant, at all times relevant hereto, was suffering from the non-work related medical conditions which included bladder cancer and Wegener's Granulomatosis, a disease of the renal system. (3/11/2008 Tr. at 10:10-12:3.) Appellant's counsel argued at the hearing that the purpose for structuring Appellant's retirement as outlined in the above facts was to maximize the funds available to Appellant to insure that he had sufficient funds to pay for the monthly medical benefit that was going to be substantial until he reached age 65, when he would qualify for Social Security. (3/11/2008 Tr. at 11:9-14:5.)
 II Standard of Review
The Superior Court's review of the decision of an administrative agency is governed by the Administrative Procedures Act ("APA"), G.L. 1956 § 42-35-1, et seq. Iselin v. Retirement Bd. ofEmployees' Retirement System of Rhode Island,943 A.2d 1045, 1048 (R.I. 2008) (citing Rossi v. Employees'Retirement System of Rhode Island,895 A.2d 106, 109 (R.I. 2006)). Section 42-35-15(g) of the APA states:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if *Page 6 
substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In reviewing an agency decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence. Center forBehavioral Health, R.I., Inc., v. Barros,710 A.2d 680, 684 (R.I. 1998) (citations omitted). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means more than a scintilla but less than a preponderance."Wayne Distrib. Co. v. R.I. Comm'n for Human Rights,673 A.2d 457, 459 (R.I. 1996) (citing Newport ShipyardInc. v. R.I. Comm'n for Human Rights,484 A.2d 893, 896 (R.I. 1994)). This Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Interstate Navigation Co. v. Div. ofPub. Utils. Carriers of R.I.,824 A.2d 1282, 1286 (R.I. 2003) (citations omitted). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of complete evidentiary support in the record." Baker v. Dept. of Employment Training Bd. ofReview, 637 A.2d 360, 363 (R.I. 1994) (quoting Milardo v.Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981)). *Page 7 
The agency in this case utilizes a two-tier review process, in which grievances are heard first by a hearing officer, who issues a written decision that is submitted to the Retirement Board. The Board considers the decision, along with any further briefs or arguments, and renders its own decision. ERSRI Reg. § 10.00(a). This two-step procedure has been likened to a funnel. EnvironmentalScientific Corp. v. Durfee, 621 A.2d 200, 207-08 (R.I. 1993). The hearing officer, at the first level of review, "sits as if at the mouth of the funnel" and analyzes all of the evidence, opinions, and issues. Id. The Board, stationed at the "discharge end" of the funnel, the second level of review, does not receive the information considered by the hearing officer first hand. Id. Our Supreme Court has held, therefore, that the "further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder." Determinations of credibility by the hearing officer, for example, should not be disturbed unless they are "clearly wrong." Id. at 206.
"Although factual findings of an administrative agency are afforded great deference, a dispute involving statutory interpretation [or, by analogy, an agency rule adopted pursuant to an enabling statute] is a question of law to which [the courts] apply de novo review." Rossi v. Employees' Retirement System ofthe State of Rhode Island, 895 A.2d 106, 110 (R.I. 2006) (citingIn re Advisory Opinion to the Governor,732 A.2d 55, 60 (R.I. 1999); City of East Providence v.Public Utilities Commission, 566 A.2d 1305, 1307 (R.I. 1989)). The courts must "give deference to an agency's interpretation of an ambiguous statute [or rule] that it has been charged with administering and enforcing, provided that the agency's construction is neither clearly erroneous nor unauthorized." Arnold v. RhodeIsland Dep't of Labor and Training Bd. of Review,822 A.2d 164, 169 (R.I. 2003) (citing In re Lallo,768 A.2d 921, 926 (R.I. 2001)); see also Lyman v.Employees' Retirement System of the State of Rhode Island,693 A.2d 1030, 1031 (R.I. 1997). *Page 8 
As such, the courts remain the final arbiters of questions of construction of statutes or agency rules. Rossi,895 A.2d at 110.
 III The ERSRI
The ERSRI is the state agency entrusted with broad powers and responsibilities for the regulation of the state retirement system.See G.L. 1956 § 36-8-3. The General Assembly endowed the ERSRI with the "general administration and the responsibility for the proper operation of the retirement system and for making effective the provisions of chapters 8-10 of this title and are hereby vested in a retirement board . . . The retirement board shall also perform such other functions as are required for the execution of chapters 8-10 of this title." Id. In enacting § 36-8-3, the General Assembly has endowed the Retirement Board with the authority to "administer" and "operate" the retirement system. Id. The Retirement Board also possesses the power to "perform such other functions as are required" for the administration of the retirement system. Id. Our Supreme Court has noted that the powers of the Retirement Board include the ability to "establish rules and regulations for the administration and transaction of the retirement system." Perotti v. Solomon, 657 A.2d 1045, 1048 (R.I. 1995) (quoting § 36-8-3). Moreover, our Supreme Court noted inArnold, 822 A.2d at 169, courts must "give deference to an agency's interpretation of an ambiguous statute [or rule] that it has been charged with administering and enforcing, provided that the agency's construction is neither clearly erroneous nor unauthorized." The Retirement Board routinely interprets the statutes it has been entrusted with administering. *Page 9 
 IV Analysis
The Appellant appeals the ERSRI decision to revoke his request to exclude the medical coverage and Medicare set-aside payments from the offset provisions of § 45-21-31 for the following reasons: that the Hearing Officer committed an error of law and violated statutory provisions when she found that § 45-21-31 applied to the amounts that Appellant received from the Town of South Kingstown School Department (per Appellant's severance agreement) and/or the Interlocal Trust (per the Medicare Set Aside) as a "set off" from the disability pension benefits due to Appellant from ERSRI.
 A Section 45-21-31
The law requires this Court to consider § 45-21-31. Section 45-21-31 provides:
 § 45-21-31. Offset of workers' compensation or personal injury recovery. — Any amounts paid or payable under the provisions of any workers' compensation law, or as the result of any action for damages for personal injuries against the municipality by which the member was employed, on account of death or disability of a member occurring while in the performance of duty, are offset against and payable in lieu of any benefits payable out of funds provided by the municipality under the provisions of this chapter on account of the death or disability of the member. If the value of the total commuted benefits under any workers' compensation law or action is less than the actuarial reserve on the benefits otherwise payable from funds provided by the municipality under this chapter, the value of the commuted payments is deducted from the actuarial reserve, and the benefits that may be provided by the actuarial reserve so reduced are payable under the provisions of this chapter. (Emphasis added.)
This Court's analysis begins by noting the disjunctive "or" in the second line of the statute. The word "or" is defined "as `[a] disjunctive particle used to express an alternative or to give a choice of one among two or more things.'" In re Abby D.,839 A.2d 1222, 1224 (R.I. 2004) (quotingBlack's Law Dictionary 987 (5th ed. 1979)). In the instant case, it is clear that the *Page 10 
funds that are subject to the offset are 1) Any amounts paid or payable under the provisions of any workers' compensation law, or 2) [Any amounts paid or payable] as the result of any actionfor damages for personal injuries against the municipality bywhich the member was employed, on account of death ordisability of a member occurring while in the performance ofduty. (Emphasis added.) This Court must consider the plain meaning of the underlined words. In the instant case, it is undisputed that the Appellant is the "member" within the meaning of the statute. It is equally undisputed that the Town of South Kingstown was the municipality by which the member was employed.
 B "Any Action for Damages for Personal Injuries against the Municipality" Argument
Appellant argues that the Hearing Officer committed an error of law for excluding the medical coverage and Medicare set-aside payments from the offset provisions of § 45-21-31. Specifically, Appellant argues that the medical coverage and Medicare set-off payments he received to settle his workers' compensation action are not "amounts paid or payable as a result of any `action for damages for personal injuries against the municipality'" within the meaning of § 45-21-31. Appellant supports this proposition by contending that he had no right to bring an action against his employer as a matter of law. Appellant essentially argues that because he was prohibited from bringing a common law tort action against his employer due to the provisions of G.L. 1956 § 28-29-20, the amount he received from his employer was not a result of an "action for damages for personal injuries."
Section 28-29-30 provides that: "an injured employee's workers' compensation benefits are an exclusive remedy `in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer.'" The interpretation advanced by the Appellant would empower the ERSRI to offset only payments made for those actions arising out of *Page 11 
common law personal injury tort claims. ERSRI, however, contends that the Appellant clearly falls within the scope of § 45-21-31, which should be read broadly to incorporate a multitude of different claims. Neither of the interpretations suggested by the parties is unreasonable.
The Supreme Court of Rhode Island has held that "if two statutes are found not to be inconsistent with one another and relate to the same subject matter, they are deemed `in pari materia and should be considered together so that they will harmonize with each other and be consistent with their general object and scope."Sch. Comm. of Cranston v. Bergin-Andrews,984 A.2d 629, 643 (R.I. 2009). The Hearing Officer essentially interpreted the phrase, "any action for damages for personal injuries against the municipality," to include those actions brought in Workers' Compensation Court. See ERSRI Dec. at 7 ("the Appellant sustained work-related injuries resulting in a claim for workers' compensation benefits"). The reading of the statute adopted by the Hearing Officer is reasonable and consistent with common usage. This logical interpretation is buttressed by the broad authority granted to the Hearing Officer. SeeArnold, 822 A.2d at 169. The State's intent to protect the interests of the public supports the Hearing Officer's interpretation of the relevant statutes.
The tenor of § 28-29-20 indicates a clear legislative intent to ensure that all actions brought by an employee against a municipal employer are properly set forth before the Workers' Compensation Court. Furthermore, § 45-21-31 makes no requirement that only civil actions be considered as an "action for damages for personal injuries against the municipality." Contrary to the Appellant's argument, the language of § 45-21-31 explicitly states that the benefits payable are offset by payments received from "any
action for damages for personal injuries." (Emphasis added.) The Supreme Court of Rhode Island recently held that "[w]e consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, *Page 12 
not as if each section were independent of all other sections."Ryan v. City of Providence, No. 2009-311-A., slip op. at 5 (R.I., filed Jan. 6, 2011). The inclusion of the term "any" in the statute shows a clear regulatory framework to include both actions at common law, and workers' compensation claims under the ambit of § 45-21-31.
Within the context of an administrative appeal, where a statute is ambiguous, the Court defers to the interpretation of the agency that has been charged with administering and enforcing the statute. This is so "even when the agency's interpretation is not the only permissible interpretation that could be applied." Auto BodyAss'n of Rhode Island, 996 A.2d at 97. In this case, the ERSRI is the agency charged with administering and enforcing § 45-21-31. For the reasons discussed above, the ERSRI Hearing Officer's and Board's interpretations are not unreasonable, unauthorized or clearly erroneous. As previously noted, our Supreme Court has held that the "further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder." Environmental Scientific Corp.,621 A.2d at 207-08. In this case, where both the Hearing Officer and the full Board agreed on the relevant statutory language of § 45-21-31, a great degree of deference should be afforded.See id.
Accordingly, the Court defers to the agency's reasonable reading of the statutes. Thus, the Hearing Officer did not commit an error of law or act in excess of statutory authority when she excluded the medical coverage and Medicare set-aside payments from the offset provisions. As such, the full Board did not commit an error of law when they adopted the Hearing Officer's findings.
 C Amounts Paid to Appellant Argument
The Appellant next asserts that the sums paid to him by the Town of South Kingstown, "were not on account of his work-related injury, nor were they on account of any personal *Page 13 
injuries sustained while working for the Town" therefore being exempt from the relevant offset provision of § 45-21-31. Appellant's argument is that only $1.00 may be offset by § 45-21-31 because $1.00 was the stated consideration for the resolution of the Workers' Compensation Court matter. ERSRI responds that the larger sum of $28,760 paid in the Release of Claims should be the appropriate offset amount. See Appellant's Ex. 2B.
Pursuant to G.L. 1956 § 42-35-12, the Administrative Procedures Act requires that "[f]indings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." See Sako v. Rogers,Inc., 536 A.2d 893, 896-97 (R.I. 1988). These findings of fact set forth in an administrative agency's decision must be supported by legally competent evidence in the record. See JohnsonAmbulatory Surgical Assocs., Ltd. v. Nolan,755 A.2d 799, 805 (R.I. 2000) (quoting BarringtonSch. Comm. v. R.I. State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992)).
In the current case, the Hearing Officer made numerous findings of fact with respect to the concerns expressed by Appellant. (ERSRI Dec. at 6.) The Hearing Officer recounted evidence she heard on the matter, including the testimony of Christine Preston, Senior Claims Representative for the Rhode Island Interlocal Risk Management Trust, and Michael J. Feeney, attorney for the Trust, who both testified that the Town of South Kingstown was seeking to limit what it perceived as potentially infinite liability by entering into a settlement agreement. (ERSRI Dec. at 4-6.) Additionally, the Hearing Officer relied on evidence that the Appellant, as a member of the Employees' Retirement System of Rhode Island, signed a Release to his employer, the Town of South Kingstown School Department. (Appellant's Ex. 2B.) The Release provides, in relevant part, that the Appellant, "for and in consideration of the sum of $31, 200" specifically: *Page 14 
 "[R]emises, releases and forever discharges the School Department, . . . elected and appointed officials . . ., from any and all other claims, actions, causes of action, grievances, arbitrations, suits, proceedings, debts, controversies, agreements, attorney fees, judgments and demands whatsoever, in law or equity, which the City, [2] its heirs, administrators, executors, successors and/or assigns have ever had, now have, or shall have but for the enforcement of this Agreement, from the beginning of the world to the date of this Agreement, whether currently asserted or not, for any and all matters in any way related to Holland's employment with the School Department. This includes, but is not limited to, Holland's right to file suit or otherwise seek or receive personal restitution for any alleged violation of Title VII of the Civil Rights Act of l964, 42 U.S.C. §§ 2000e. et. seq; the Age Discrimination and Employment Act, 29 U.S.C. §§ 621 et seq; the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq; the Rhode Island Fair Employment Practices Act, R.I.G.L. § 42-112-1 et seq; the Rhode Island Civil Rights of People with Disabilities Act, R.I.G.L. § 42-87-1 et seq; or any other alleged violation of any local, state or federal law, regulation, rule of law, or ordinance having any connection whatsoever with Holland's employment and/or separation from employment with and/or separation from the School Department. The parties intend this provision to be all-encompassing and to act as a full and total release of any and all claims arising out of or in any way related to Holland's employment with and/or separation from the School Department, except as otherwise stated, whether or not specifically referred to herein." (Appellant's Ex. 2B) (emphasis added).
The very broad wording of the Release, and especially the phrases, "including but not limited to," "having any connection whatsoever," and the provision — "[T]he parties intend this provision to be all-encompassing and to act as a full and total release of any and all claims arising out of or in any way related to Holland's employment with and/or separation from the School Department, except as otherwise stated, whether or not specifically referred to herein" — clearly encompass an action for death or disability of the member occurring while in the performance of duty. Seeid. The testimony of the witnesses, as set forth in the record, makes it clear that the $28,760 provided to Holland, in return for his execution of the Release, was *Page 15 
provided on account of the disability of a member occurring while in the performance of duty. See id.
While the courts are the ultimate arbiters regarding any dispute involving statutory interpretation, Rossi,895 A.2d at 110, courts should reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record. Baker,637 A.2d at 363. It is clear that the Board's findings of fact regarding the settlement payment are based upon competent evidence in the record. See Environmental Scientific,621 A.2d at 209. In the instant administrative appeal, the official record contains a letter dated October 29, 2007, from the Board's Executive Director. (Joint Ex. 2.) The letter is addressed to Appellant's attorney. Paragraphs 2 and 3 specifically provide:
 "Consistent with Rhode Island General Laws § 45-21-31, you will note that the underlined text provides that any action for damages for personal injuries against the municipality must be offset. The statute expressly states that:
 `Any amounts paid or payable under the provisions of any workers' compensation law, or as the result of any action for damages for personal injuries against the municipality by which the member was employed, on account of death or disability of a member occurring while in the performance of duty, are offset against and payable in lieu of any benefits payable out of funds provided by the municipality under the provisions of this chapter on account of the death or disability of the member.'" Id.
(Bold, underline, and italics in original.)
The Executive Director's factual determination that the Release was an "action for damages for personal injuries" is supported by Rhode Island case law. Rhode Island tends to classify injuries that result from violations of specific Civil Rights acts, such as those set forth in the Release, as personal injuries. The most common context in which the courts analyze this particular issue involves determinations as to which statute of limitations should be applied to state and federal law. Rhode Island's statute of limitations for personal injuries codified in G.L. 1956 § 9-1-14(b) *Page 16 
provides, in relevant part: "Actions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after."
The Rhode Island Supreme Court has held that the legislative intent behind § 9-1-14(b) was to enact a comprehensive statute that includes "all actions that reasonably could be viewed as arising out of injuries to the person." Commerce Oil RefiningCorp. v. Miner, 98 R.I. 14, 19, 199 A.2d 606, 609 (1964). InCommerce Oil Refining Corp., the Rhode Island Supreme Court held: "[T]he phrase `injuries to the person' . . . is to be construed comprehensively and as contemplating its application to actions involving injuries that are other than physical. Its purpose is to include within the period of limitation actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is rights to which one is entitled by reason of being a person in the eyes of the law." Id.98 R.I. at 20-21, 199 A.2d at 610. More recently, in Horn v.Southern Union Co., 927 A.2d 292, 299-300 (R.I. 2007), Justice Suttell, writing in dissent, noted that "[u]tilizing our holding from Commerce Oil, the court acknowledges that the phrase `injuries to the person' was not held limited strictly to physical injuries; rather, § 9-1-14(b) was held to cover `injuries to personal dignity' as well."
The Court defers to the administrative agency's factual determinations provided that they are supported by legally competent evidence. See Arnold, 822 A.2d at 167. The Executive Director's finding that the Release signed by the Appellant constituted an "action for damages for personal injuries" is clearly supported by competent evidence, given that the Release explicitly waived any claims for civil rights violations, which Rhode Island Courts have traditionally considered "personal injuries."See Commerce Oil Refining Corp.,98 R.I. at 20-21, 199 A.2d at 610. *Page 17 
After review of the letter from the Executive Director contained in the official record, the Executive Director and Hearing Officer's decisions that relied on the written Release, and the aforementioned witness testimonies, this Court does not find that the Board's decision was totally devoid of competent evidentiary support in the record. As such, the administrative decision appealed from was neither arbitrary nor capricious and did not constitute an abuse of discretion. Although ample evidence was presented on both sides, this Court may not substitute its judgment for that of the ERSRI.See § 42-35-(g). When a hearing officer has relied on credibility determinations, the second-tier decision-maker should give great deference to the findings and conclusions of the hearing officer, unless they are clearly wrong. See EnvironmentalScientific, 621 A.2d at 208. The Hearing Officer's decision clearly states that ERSRI's evidence was more credible than Appellant's evidence on this issue, and this Court must give deference to that determination. See ERSRI Dec. at 5.
 V CONCLUSION
After review of the record and the arguments of all parties, the Court finds that the ERSRI did not violate statutory provisions, exceed its statutory authority, or commit an error of law. The ERSRI's decision was not arbitrary, capricious, or characterized by an abuse of discretion. Appellant's substantial rights have not been prejudiced. Therefore, the decision of the Board of the Employees' Retirement System of Rhode Island is affirmed. Counsel shall submit the appropriate judgment for entry.
[1] The Designation of Record of Administrative Appeal has been organized using tab numbers.
[2] This Court construes the term, "City," to mean the Town [of South Kingstown]. *Page 1