241 A.2d 291.

THE BEACON RESTAURANT, INC. *vs.* PAT JOHN ADAMO *et al.*

APRIL 22, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This civil action in the nature of mandamus was instituted against the defendants who, as members of the Westerly town council, constitute the board of

license commissioners for that municipality. The complaint was brought to order the defendants to advertise a public hearing on a proposed transfer of a class B victualler beverage license presently held by Sunny Day Restaurant, Inc. to the plaintiff. The case is before us on the defendants' appeal from a judgment of the superior court which granted the request for mandamus and directed the defendants: to set a date for a hearing on the transfer application; to advertise notice of the pendency of the application; and to conduct the hearing thereon. Enforcement of the writ has been stayed pending this appeal. Hereafter we shall refer to the plaintiff as "Beacon," the defendants as "the council," and the holder of the license as "Sunny Day."

Sunny Day is a Rhode Island corporation which owns and operates a tavern at the corner of Atlantic Avenue and Winnapaug Road in the Misquamicut Beach section of Westerly. On December 21, 1965, the council met and received an application for the transfer of the liquor license from Sunny Day to Beacon. The application which was signed by the respective presidents of the transferor and transferee also contained a request that the license be transferred from its present location to a new one described in the application as the "North Side of Atlantic Avenue, Misquamicut, R. I. — Lot No. 7, Plat of Rear Beach Lots, Pleasant View, Westerly, R. I."

The council[1] discussed the application and then directed its clerk to notify Beacon that it was unable to consider the application because of the proposed change in the location of the premises to be affected by the license and the absence of any building on the lot described in the applica-

---

[1]There is no transcript with the record of this case. The narrative set forth in this opinion as to what occurred at the council meetings comes from the certified records of the Westerly town clerk which are an exhibit in the companion case of *Sunny Day Restaurant, Inc.* v. *The Beacon Restaurant, Inc.*, 103 R. I. 707, 241 A.2d 295.

tion. The clerk complied with the council's mandate and on December 24, 1965, she sent the president of Beacon a letter embodying the council's decision. A copy of this letter is a part of the record.

When the council met on February 14, 1966, the clerk informed the body that she had received a telephone call from the president of Sunny Day asking that the application for the transfer of its license be withdrawn. Beacon's attorney was in attendance at the meeting. He told the council that, contrary to the assertion contained in the clerk's letter, there was a building located on the site described in the application; and he also submitted a memorandum of law to the council and urged it to advertise the required public hearing on the transfer. Counsel for the president of Sunny Day then addressed the local legislature. His client, he said, was going to sell the entire stock in the corporation to a third person later identified as John E. Cherenzia. This lawyer asked the council to permit the withdrawal of the transfer application. The council then referred the controversy to the town solicitor with a directive that he furnish it at some later date with an opinion as to the course of action it should follow in the light of the views expressed by the two attorneys. At a special meeting on March 1, 1966, the solicitor's opinion was read by the clerk. It advised the council that under the zoning ordinance an enterprise such as contemplated by Beacon could operate at its proposed location only if it were granted a special exception by the zoning board. Since such an exception had been neither asked of nor granted by the board, the solicitor told the council that it could not entertain the application for the license transfer. A spirited discussion followed in which members of the council and the respective attorneys for Sunny Day and Beacon participated. It was then voted that the entire question be tabled to a later date.

Beacon commenced this litigation on February 23, 1966. Although the council was served with a process on that day, it failed to answer the complaint within the following 20 days as is specified by rule 12 of the rules of civil procedure of the superior court. On April 8, 1966, Cherenzia filed a motion to intervene as a party defendant. Three days later Sunny Day filed a similar motion. On April 18, 1966, Beacon filed a motion for summary judgment under rule 56 of the rules of civil procedure together with an affidavit in support thereof. The council filed an answer on April 21, 1966—over a month beyond the twenty-day limitation set forth in rule 12 of the rules of civil procedure. In its answer, the council admitted that it had refused to advertise the application but attempted to justify its position because of the alleged presence of certain zoning restrictions which we have already referred to and to Sunny Day's attempted withdrawal of the transfer request. Nowhere in its answer did the council renew its allegation that there was not a building on the lot owned by Beacon.

Following the council's belated reply, there followed a series of motions to strike filed by plaintiff and a quite belated attempt by the council to file an amended answer. These motions, together with the intervenors' motions, were considered by the superior court at various times during the years 1966-1967. It was not until March 16, 1967, that the judgment complained of here was entered. Another factor contributing to the delay in a purposeful consideration of this case was a municipal election which was held in Westerly in November, 1966. This biennial event caused an almost complete replacement of the then incumbent council and the appointment of a new solicitor who assumed this position on January 9, 1967.

After sweeping away the plethora of motions filed herein, the simple issue presented for our consideration is the right of a person who has applied for a transfer to him of a retail

liquor license held by another to have this matter heard by the local licensing authority. Under G. L. 1956, §3-5-19, a local licensing board may allow the transfer of an outstanding license only after it has given public notice of the pending application in a manner set forth in §3-5-17. The pertinent portion of this latter section which provides for the advertising of the date of the hearing on the transfer application reads as follows:

> "Before granting a license to any person * * * the board, body or official to whom application for the same shall be made, *shall* give notice by advertisement * * * in some newspaper published in the city or town where the applicant proposes to carry on business * * *. Said notice shall state that remonstrants are entitled to be heard before the granting of such license, and shall name the time and place of such hearing. * * *"
> (italics ours)

We believe that the general assembly has vested no discretion in the council insofar as it concerns its authority to refuse to advertise the instant application. The legislature in enacting §3-5-17 has employed the word "shall" and in the circumstances presented here, we shall give this word its common and usual meaning and therefore we construe it in an imperative sense.

It is plain from an examination of the language in the statute that the advertising of a pending transfer application is an unquestioned ministerial duty. The Connecticut supreme court in *Blake* v. *Mason,* 82 Conn. 324, 73 A. 782, stated that the word "ministerial" refers to a duty which is to be performed by an official " '* * * in a given state of facts, in a prescribed manner * * * without regard to or the exercise of his own judgment upon the propriety of the act being done.' " The advertising and the holding of the required hearing, we believe, came within the definition of ministerial as set forth by the Connecticut court, and mandamus is therefore a proper remedy.

It matters little that Beacon took no appeal to the liquor control administrator regarding the council's failure to comply with the statute. By its nonfeasance the council has, in our opinion, effectively nullified any appeal rights that are available under the provisions of §3-7-21. This section gives the liquor control administrator "* * * the right to review the *decision* of any local board * * *." (italics ours) The failure of the council to perform what are patent ministerial duties cannot be considered a decision from which recourse can be had to the administrator. A decision, as that term is used in the statute, contemplates action taken by the council after it has conducted a hearing referred to in §3-5-17. Here the council did nothing. It has heard no testimony, listened to no arguments or done anything which could be reviewed by the liquor control administrator under §3-7-21.

In *Malinou* v. *McElroy*, 99 R. I. 277, 207 A.2d 44, we held that it was not the duty of a clerk of a probate court to pass on the sufficiency or propriety of a petition presented to him for filing. Such an arrogation, we said, would deprive a petitioner of his right to appeal to the superior court as provided in §33-23-1. So also in this case there must be some determination by a local liquor licensing board, after a hearing as provided for in §3-5-17, before the appellate powers of the liquor control administrator can be brought to bear. The only remedy available to Beacon was the invocation of the extraordinary writ of mandamus.

We find no merit in the council's argument that this controversy is moot because the transfer application concerned itself with a license which expired on December 1, 1966, and the license for the year commencing December 2, 1966, was issued to Sunny Day and no appeal therefrom was taken by Beacon. This argument is based in part on §3-5-8 which states "Every license except retailer's class F licenses and

retailer's class G licenses shall expire on December 1 next after its issuance."

This court rejected a similar argument in *Tedford* v. *Reynolds*, 87 R. I. 335, 141 A.2d 264. We pointed out in *Tedford* that the adoption of such a view would unjustly deny an applicant for a license his right to have his case reviewed by the liquor control administrator in accordance with the provisions of §3-7-21. A liquor license under Rhode Island law is something more than a mere privilege which expires automatically on December 2 of each year. Recently in *Vitterito* v. *Sportsman's Lodge & Restaurant, Inc.*, 102 R. I. 72, 228 A.2d 119, it was shown that a properly issued liquor license, while it may not be property in the strict legal sense, has some of the aspects of a property right. The legislature has recognized this quality by providing in §3-7-6, as amended, that a holder of a class A, B or C license who applies prior to November 15 of the year in which his license expires is prima facie entitled to a renewal thereof. Accordingly, we believe that an applicant who has expeditiously pursued his request for a transfer of an existing license before the local licensing agency is still entitled to be heard thereon even though the license year during which he has applied has expired. This is especially true in this case when the reason for the passage of time is attributable to the council's failure to seasonably perform its statutory duty during the year 1966. As we have stated before, this court does not operate in an intellectual vacuum. It has been admitted by the parties that the Westerly council has limited the number of available class B retail licenses. Such a permit has a unique value. We cannot allow a local licensing board to foreclose a person's opportunity to obtain such a license by the simple expediency of complete inertia.

The dissatisfaction of Beacon with the council stems from the council's do-nothingness. The Westerly legislature has not only ignored the requirements of the notice statute and

failed to advertise the petition but it has also completely disregarded the request of Sunny Day that the application be withdrawn. Such a delay and inactivity can be countenanced no longer. It is our judgment that Beacon has a right to have a hearing on the transfer application. It is at the hearing that the council can consider evidence of buildings or lack of buildings or any other factors which might militate against the proposed transfer. In view of Beacon's insistence that it be heard, Sunny Day has no absolute right to a withdrawal of the application. As we stated in *Manoogian* v. *Williamson*, 89 R. I. 426, 153 A.2d 165, an application for a license transfer cannot be withdrawn without leave, and under our law whether leave should be granted lies within the sound discretion of the board. It is within the power of the council to require Sunny Day to give its reasons for the withdrawal and to hear Beacon's objections thereto before it grants or denies the application.

In affirming the issuance of mandamus by the superior court, it is to be noted that the only effect of this writ is the direction to the council to advertise and hold a hearing on the transfer. Whether the application is to be granted or denied, however, is a matter in the first instance for the council.

The town council has also urged error in several rulings made by the superior court on the many motions filed herein. We have examined these contentions in the light of the record before us and find they are without merit.

The defendants' appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remanded to the superior court.

*Natale L. Urso, John J. Adamo,* for plaintiff.

*Joseph J. Parrilla,* Town Solicitor, for defendants.