**Sheilah I. CARRILLO et al.**

v.

**Don ROHRER et al.**

**No. 80–561–Appeal.**

Supreme Court of Rhode Island.

Aug. 11, 1982.

Barry Best, Rhode Island Legal Services, Inc., Providence, for plaintiff-respondent.

Mary Ellen McCabe, Chief Legal Counsel, Dept. of Health, Div. of Legal Services, Providence, for defendant-petitioner.

OPINION

BEVILACQUA, Chief Justice.

The United States District Court for the District of Rhode Island, acting pursuant to Rule 6 of the Supreme Court Rules, has certified to this court a question of law. The nature of the instant controversy is as follows.

Hernan D. Carrillo (Hernan), a minor, is a Rhode Island resident who is currently undergoing inpatient treatment at Emma Pendleton Bradley Hospital (Bradley), a children's psychiatric hospital in East Providence, Rhode Island. His mother, Sheilah I. Carrillo (Sheilah), filed an application requesting that the state pay for the costs of her son's hospitalization at Bradley through the catastrophic health insurance plan (CHIP). The CHIP Act, G.L.1956 (1977 Reenactment) §§ 42–62–1 to –25, provides that "[t]he state shall pay for the costs of eligible health services of an eligible person when such costs are determined to be catastrophic." Section 42–62–6(a), as amended by P.L.1980, ch. 256, § 1. The care and treatment that Hernan receives at Bradley constitutes an "eligible health service" within the meaning of the act, Sheilah meets the act's definition of "eligible person,"[1] and the hospitalization costs that Sheilah has incurred are sufficient to be determined "catastrophic" within the meaning of the act.[2] Sheilah's CHIP application was denied, however, solely on the ground that she was excluded from CHIP coverage by § 42–62–8, as amended by P.L.1980, ch. 256, § 1, of the CHIP Act. That section provides in pertinent part as follows:

"*Exclusions.*—All services and charges within any of the following classifications are excluded from the financial protection provided pursuant to § 42–62–6 and shall not be included as applicable personal resource payments pursuant to § 42–62–7.

(a) Benefits provided pursuant to the laws of the United States, and or the state, including, but not limited to military service-connected disabilities, medical services provided for employees of the armed forces of the United States, medical services financed for the benefit of persons eligible for Medicare (Title XVII); *persons eligible for Medicaid (Title XIX) shall not be eligible for CHIP * * *[.]*" (Emphasis added.)

Both Sheilah and Hernan are eligible for Medicaid, the medical assistance program administered by the State of Rhode Island under G.L.1956 (1977 Reenactment) §§ 40–8–1 to –14 and title 19 of the Social Security Act, 42 U.S.C.A. §§ 1396 to 1397 (West 1974). This program furnishes funds for certain medical services for needy families with dependent children and to aged, blind, or disabled persons who may be categorically or medically needy as defined by the federal statute or the state program. The Rhode Island Medicaid program, however, does not provide payment for the costs of inpatient psychiatric hospital services for an eligible child under age twenty-one. *Roe v. Affleck*, R.I., 390 A.2d 361, 364 (1978).

Sheilah, on behalf of herself, her son, and other persons similarly situated, brought a civil suit in the Federal District Court seeking to enjoin defendants, Don Rohrer, the director of the Rhode Island Department of Administration, and Joseph Cannon, the director of the Rhode Island Department of Health, from refusing to pay for Hernan's care and treatment at Bradley.

The following question has been certified to this court:

"Under the language of R.I. G.L. § 42–62–8(a), as amended in 1980, is a person

1. General Laws 1956 (1977 Reenactment) § 42–62–4(n), as amended by P.L.1980, ch. 256, § 1, defines the term "eligible person" as "a person who has established permanent residency in the state for three (3) months and who has the legal responsibility for the payment of eligible health costs * * *."

2. Costs are determined to be catastrophic when an eligible person has incurred an obligation to make a "personal resource payment" as reimbursement for eligible health services. Section 42–62–7(a), as amended by P.L.1980, ch. 256, § 1. The act defines a "personal resource payment" as an obligation to pay a specified amount of money from one's wages, salary, income, or assets, which amount is not otherwise reimbursable under a health plan provided by an insurer, the state, or the United States. Section 42–62–4(p). The amount of payment required varies depending on the level of the applicant's health insurance and income. The better the basic health insurance an applicant carries, the quicker eligibility for CHIP may be established. If all eligibility requirements are met, the state will pay the costs of health care and treatment to the extent that such costs exceed the applicant's personal resource payment.

who is eligible for Medicaid (Title XIX of the Social Security Act) ineligible for *all* Catastrophic Health Insurance Plan (CHIP) coverage, or ineligible for CHIP coverage only with regard to payments for care for which Medicaid coverage is available?"

■ In construing a statute, this court's primary task is to effectuate the intention of the Legislature. *Vaudreuil v. Nelson Engineering & Construction Co.*, R.I., 399 A.2d 1220 (1979). Therefore, this court will not undertake to read an enactment literally if to do so would result in attributing to the Legislature an intention that is contradictory to or inconsistent with the evident purposes of the act. *Kingsley v. Miller*, R.I., 388 A.2d 357 (1978); *Providence Journal Co. v. Mason*, 116 R.I. 614, 359 A.2d 682 (1976); *Angel v. Murray*, 113 R.I. 482, 322 A.2d 630 (1974). The CHIP Act is remedial social legislation designed to provide financial assistance to those who incur extremely high medical expenses, and its provisions should be construed liberally to effectuate its purpose. *Cf. Volpe v. Stillman White Co.*, R.I., 415 A.2d 1034 (1980) (Workers' Compensation Act is social legislation and therefore should be construed liberally).

Section 42–62–8(a) provides that "persons eligible for Medicaid (Title XIX) shall not be eligible for CHIP * * * [.]" The defendants contend that a literal interpretation of this section would be reasonable because a Medicaid-eligible person is protected from extremely high medical costs despite the unavailability of CHIP coverage for such costs. According to defendants, the types of health services for which CHIP coverage is available are, with the exception of inpatient psychiatric care, also covered by the Rhode Island Medicaid program. Because state institutions exist to provide free inpatient psychiatric care to those who cannot afford such services, defendants argue, there exists no class of persons without protection from the incurment of catastrophic health-services costs under a literal interpretation of § 42–62–8(a).

After careful scrutiny of the relevant statutes and regulations,[3] however, we conclude that the Legislature could not have intended that the final clause of § 42–62–8(a) be given a literal interpretation. The defendants' argument is flawed in that there do exist types of services that are covered by CHIP but for which Medicaid benefits are either actually or potentially unavailable. Examination of the services covered by both programs reveals that, unlike CHIP, the Rhode Island Medicaid program as it is currently administered does not provide benefits for chiropractic services or certain speech and physical therapy services. Moreover, podiatry services, ambulance services, and certain outpatient hospital services are covered by CHIP but are not provided to Medicaid-eligible persons who are classified as medically needy. Furthermore, a comparison of the enabling statutes of CHIP and Medicaid demonstrates the potential for an even greater disparity in the types of services covered by the two programs because several of the services statutorily required to be reimbursable under CHIP are not required to be included in the Medicaid program.[4] The

**3.** The services offered in the Rhode Island Medicaid program are set forth in the Department of Social and Rehabilitative Services "Manual of Public Assistance Programs." The services covered by CHIP are set forth in the "Rules and Regulations Pertaining to the Catastrophic Health Insurance Plan (CHIP)" promulgated by the Department of Health.

**4.** The CHIP Act requires that the following services be covered by CHIP: hospital services (excepting charges for a private room), physician services, skilled nursing facility and visiting-nurse services in accordance with Medicare guidelines, prescription drugs, ambulance serv-

ices, dental services (limited to surgery of the jaw or related structures or to dental services required as the result of an accident), chiropractic services (limited to the manual manipulation of the spine to correct a subluxation that can be demonstrated by X-ray), speech and physical therapy, radiological services, and diagnostic services, § 42–62–6.

The Medical Assistance Act mandates the coverage of the following services: inpatient hospital services (other than services in a hospital, institution, or facility for tuberculosis or mental diseases), nursing services for such periods of time as the director shall authorize, visiting nurse services, drugs for consumption

possibility exists, therefore, that some services that are presently included in both CHIP and Medicaid may be eliminated from the Medicaid program by administrative action in the future.

Because the Medicaid program does not, or may not in the future, provide benefits for every type of health service that is covered by CHIP, the exclusion of persons from CHIP coverage solely on the basis that they are eligible for Medicaid would mean that Medicaid-eligible persons receiving services not covered by Medicaid would be excluded from certain services under both programs. A literal interpretation of the final clause of § 42–62–8(a), therefore, would render a portion of the most needy segment of the state's population—those eligible for Medicaid—unprotected from high medical costs. Clearly, such a result would conflict with the purposes of the CHIP Act.

■ We believe that the obvious legislative intent behind § 42–62–8 is to prevent a

person who has other means of financing medical care and treatment from effecting a double recovery by also receiving reimbursement for such costs through CHIP. We therefore conclude that under § 42–62–8(a), a person who is eligible for Medicaid *or other state or federal program* that provides a means of defraying health-service costs is ineligible for CHIP coverage only for the costs of those services available under such programs.[5]

■ In the case of inpatient psychiatric care for Medicaid-eligible persons, it is apparent that although Medicaid is not available for such care, the state has otherwise ensured that Medicaid-eligible persons be protected from excessive health costs by providing that persons unable to pay for such services may be treated at state or private institutions at state expense.[6] Because this statutory plan constitutes a

---

either by inpatients or by other persons for whom they are prescribed by a licensed physician, and dental services, § 40–8–4, as amended by P.L.1977, ch. 269, § 1.

**5.** Although the question certified focuses attention solely upon the exclusion under § 42–62–8(a) concerning benefits furnished under Medicaid, the question cannot be answered without reference to the language of the entire subsection, which excludes coverage for benefits provided by other state or federal agencies. In sum, a Medicaid-eligible person is not entitled to reimbursement under CHIP for treatment or services obtained from private health care providers when the same or equivalent services are available at a state or federally-operated agency or facility.

**6.** General Laws 1956 (1977 Reenactment) § 40.1–5–35 provides:

"The director may maintain without charge or defray the expense of care and treatment of such poor or indigent persons as are mentally disabled patients under treatment in accordance with the provisions of this law, who may have been admitted or certified to any facility under the provisions hereof. No person shall be denied care and treatment under the provisions of this chapter at any facility maintained by the state of Rhode Island because he is unable to pay for said care and treatment."

General Laws 1956 (1979 Reenactment) § 40.1–5.2–11, as amended by P.L.1979, ch. 39, § 1, authorizes the state to provide financial

support to indigent patients in private institutions:

"The director of mental health, retardation and hospitals may designate as state beneficiaries such indigent insane persons under treatment in accordance with the provisions of this chapter, being inhabitants of this state, as said director may deem proper objects for state aid; and the state controller shall draw his order on the general treasurer for such sums as the director of mental health, retardation and hospitals may certify to be due the Butler hospital or other curative hospital for the insane, for the maintenance in whole or in part of any state beneficiary, at a rate not exceeding the average per capita cost of maintenance of the inmates of the state hospital for mental diseases based upon the preceding fiscal year; provided, that the amount paid for the maintenance of all beneficiaries in any one (1) year shall not exceed the amount of the appropriation in such year for the support of the indigent insane."

The Services for emotionally disturbed children law, G.L.1956 (1977 Reenactment) §§ 40.-1–7–1 to –9, establishes a program for emotionally disturbed children, including the placement of such children in psychiatric hospitals at state expense. Children of Medicaid-eligible persons may participate in this program, although such participation is limited by the appropriated financial resources. *Roe v. Affleck*, R.I., 390 A.2d 361, 368 (1978).

health benefit provided by the state,[7] persons for whom this benefit is available are excluded under § 42–62–8(a) from obtaining CHIP coverage for the costs of such care. Accordingly, it is our opinion that inpatient psychiatric hospital services for Medicaid-eligible persons who may obtain such services at state expense are not reimbursable under CHIP.

**7.** A "benefit" is defined in the act as "a health service financed for a person by a third party such as an insurer or the state," § 42–62–4(f).