**NEW ENGLAND DEVELOPMENT,
LLC**

v.

**Noel BERG.**

**No. 2006–94–Appeal.**

Supreme Court of Rhode Island.

Jan. 12, 2007.

Deming E. Sherman, Providence, for Plaintiff.

Jeanne M. Scott, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## O P I N I O N

Justice FLAHERTY, for the Court.

The desire of New England Development, LLC (plaintiff or NED), to build a substantial shopping center in Tiverton (Tiverton Commons) and an allegation that the Tiverton Planning Board (planning board) failed to approve NED's master plan in a timely fashion brings this dispute before the Court. The planning board voted to reject NED's master plan application, but NED contends that the planning board's failure to file a written decision in accordance with a statutory deadline triggered its entitlement to a certificate of the planning board's failure to act and the resulting approval of its master-plan application. When the administrative officer for the Tiverton Planning Board, Noel Berg (Berg), refused to issue that certificate, NED petitioned the Superior Court for a writ of mandamus to compel Berg to issue it, contending that, in view of the board's failure to act, Berg's duty to issue the certificate was ministerial in nature. The trial justice denied that petition, and NED timely appealed. For the reasons discussed in this opinion, we affirm the judgment of the Superior Court.

## I

### Statutory Scheme

In 1992, the General Assembly enacted G.L. 1956 chapter 23 of title 45 known as the "Rhode Island Land Development and Subdivision Review Enabling Act of 1992," (P.L. 1992, ch. 385, § 1). The purpose of the act was expressed by the Legislature in § 45–23–29(c). The text of that statute, entitled Legislative Findings and Intent, says, in pertinent part:

"(c) * * * [I]t is the intent of the general assembly:

"(1) That the land development and subdivision enabling authority contained in this chapter provide all cities and towns with the ability to adequately address the present and future needs of the communities;

"(2) That the land development and subdivision enabling authority contained in this chapter require each city and town to develop land development and subdivision regulations in accordance with the community comprehensive plan, capital improvement plan, and zoning ordinance and to ensure the consistency of all local development regulations;

"(3) That certain local procedures for review and approval of land develop-

ment and subdivision are the same in every city and town;

"(4) That the local procedure for integrating the approvals of state regulatory agencies into the local review and approval process for land development and subdivision is the same in every city and town; and

"(5) That all proposed land developments and subdivisions are reviewed by local officials, following a standard process, prior to recording in local land evidence records."

NED filed what is described in the act as a major land development master plan application for Tiverton Commons. Section 45–23–40(b) requires that such applications be certified complete or incomplete within 60 days of submission, and subsection (e) requires that the planning board approve, approve with modifications, or deny the application within 120 days of the issuance of a certificate of completion [1] according to the requirements of § 45–23–63. Subsection (f) of § 45–23–40 further provides that, if the planning board does not take action within the 120–day period to either approve or deny the master plan, the applicant shall receive, upon request, a certificate of the planning board's failure to act from the administrative officer of the planning board.[2] This certificate results in the approval of the master plan.

**1.** The act further provides that the 120–day period can be extended to such later time as is agreed to by the applicant. G.L. 1956 § 45–23–40(e).

**2.** The pertinent subsections of § 45–23–40 are as follows:

"(b) *Certification.* The application must be certified complete or incomplete by the administrative officer within sixty (60) days, according to the provisions of § 45–23–36(b). The running of the time period set forth herein will be deemed stopped upon the issuance of a certificate of incompleteness of the application by the administrative officer and will recommence upon the resubmission of a corrected application by

the applicant. However, in no event will the administrative officer be required to certify a corrected submission as complete or incomplete less than fourteen (14) days after its resubmission.

"* * *

"(e) *Decision.* The planning board shall, within one hundred and twenty (120) days of certification of completeness, or within a further amount of time that may be consented to by the applicant, approve of the master plan as submitted, approve with changes and/or conditions, or deny the application, according to the requirements of § 45–23–63.

Section 45–23–63 sets out the procedure planning boards must follow with regard to meetings, votes, decisions, and records. The pertinent part of § 45–23–63 is subsection (a), which requires that "[a]ll records of the planning board proceedings and decisions shall be written and kept permanently available for public review." Moreover, the act provides that an appeal may be taken only from a decision on file with the town clerk, and that the appeal period runs for twenty days from the filing of that decision. Section 45–23–67(a). In accord with the mandate of § 45–23–26, the Town of Tiverton enacted ordinances that essentially mirror the requirements of the general laws.[3]

Having set out the pertinent statutory framework for planning board consideration of major land developments, we now undertake a brief review of the facts that gave rise to the appeal currently before us.

## II

### Facts and Procedural History

NED began its quest to build Tiverton Commons on a forty-acre site on the south side of Souza Road[4] in Tiverton on September 3, 2004 by submitting a major land development/master plan application to the Tiverton Planning Board. On October 27, 2004, the board issued a "Certificate of Completeness" for the application, setting in motion the 120–day clock, by the end of which the board was required to "approve of the master plan as submitted, approve with changes and/or conditions, or deny the application." Section 45–23–40(e).

In an effort to address local concerns, NED subsequently consented to eight different extensions of the statutory decision deadline.[5] During the time that NED's application was pending, the planning board discussed the application at regularly held meetings, and it also held workshops at which NED and the planning board worked jointly on the plan in an effort to make it mutually acceptable. At the September 29, 2005, board meeting, the parties agreed to an ultimate deadline extension, establishing December 30, 2005, as the final date for the planning board to take action on the application. At this same meeting, the board and NED agreed that NED would withdraw the original master plan that called for a 335,000–square–foot complex, and replace it with

"(f) *Failure to act.* Failure of the planning board to act within the prescribed period constitutes approval of the master plan, and a certificate of the administrative officer as to the failure of the planning board to act within the required time and the resulting approval will be issued on request of the applicant."

3. The corresponding Tiverton ordinances are: Tiverton Mun. Code app. B, sec. 23–28 (time frame for certificate of completeness of the application); *id.* at sec. 23–29 (time frame for the planning board's decision on the application, and the requirement that the administrative officer issue the certificate of failure to act if no action is taken); *id.* at sec. 23–46 (requirement that records of proceedings and decisions be in writing); *id.* at sec. 23–79(a) (appeals procedure).

4. The owner of the land that NED hopes to develop is James J. McInnis as trustee of the Tiverton Associates Trust. In January 2002, McInnis brought suit against the Town of Tiverton challenging an amendment to the zoning ordinance that made construction of the type NED seeks subject to a "Special Use Permit" requirement, although such use previously was permitted by right. No issues related to that suit currently are before this Court.

5. The record indicates that on January 4, 2005, January 27, 2005, March 1, 2005, March 29, 2005, May 2, 2005, May 25, 2005, August 25, 2005, and September 29, 2005 NED and the board agreed to extend the deadline for the board to make a decision on the application.

an alternate design that called for a 275,-000–square–foot complex. There was no indication at the meeting that this plan substitution was to be treated as a new application.[6] Additionally, five dates were set for future meetings to consider the application before the December 30, 2005 deadline.[7]

NED's efforts did not bear fruit, however, and when the planning board met on November 21, 2005, its members voted unanimously to deny the master plan application for Tiverton Commons. But, no written decision of the planning board was filed with the town clerk before December 30, 2005. Consequently, on January 3, 2006, NED requested that Berg issue it a certificate of the planning board's failure to act by January 9, 2006. Issuance of that certificate would have resulted in the approval of the master plan by the terms of § 45–23–40(f). When it received no response from Berg, NED filed a verified petition for writ of mandamus in the Supe-

rior Court for Newport County on January 10, 2006.

After the mandamus petition was filed, Berg, in a letter dated January 11, 2006, informed NED that the November 21, 2005 vote to deny the master plan application was all (in the opinion of the planning board) that was required to be done to satisfy the statutory requirements, and, therefore, he could not issue NED the certificate it had requested. Shortly thereafter, on January 13, 2006, Berg completed a written decision denying the master plan application, and he filed it with the town clerk. That decision was never presented to or voted on by the planning board. It is also noteworthy that NED filed a timely appeal of that decision to the Tiverton Board of Appeals on February 1, 2006.[8] That appeal has been stayed pending the outcome of this appeal.

A trial was held in Superior Court on the petition for writ of mandamus on February 28, 2006. At that trial, NED asserted that § 45–23–40(e) & (f) required the

6. The record indicates that the 275,000–square–foot plan was the product of the workshops the planning board held with NED. The minutes of the meeting reveal that NED requested that the planning board consider the 275,000–square–foot plan along with the 335,-000–square–foot plan because it appeared that the planning board was more amenable to the smaller plan. Members of the planning board, as well as members of the public, expressed trepidation about that request because they had arrived at the meeting under the impression that the purpose of the meeting was to consider the 335,000–square–foot-plan only. After discussion, ultimately a motion was presented that said:

"Motion to accept the offer of New England Development to permanently withdraw the 335,000 SF Master Plan Proposal currently being considered by the Planning Board and accept a revised single-phase plan not to exceed 275,000 SF to be submitted as a substitute Master Plan for consideration by the Planning Board, which revised plan shall include an additional site of up to

15,000 SF for a municipal use and that the Planning Board shall have up to and including December 30, 2005 to approve, approve with changes and/or conditions or deny the Master Plan."

After the addition of one cosmetic amendment, this motion passed, with one vote against it.

7. October 20, 2005, November 7, 2005, November 21, 2005, November 29, 2005, and December 5, 2005 were the dates set for meetings to consider the proposal.

8. Although NED has appealed that decision, it maintains that, because the decision never was approved by the planning board, it is not a valid action of the planning board because the planning board cannot act unless it does so in an open meeting. We express no opinion with regard to this argument. The proper forum for this challenge is the Tiverton Board of Appeals, where a record can be developed as to the past practices of the town in issuing decisions memorializing the votes of the board.

planning board to issue a *written* decision and file it with the town clerk with respect to its vote on the master plan application by the conclusion of the statutory time period—in this case December 30, 2005. NED further maintained that the planning board's failure to file a written decision by that date triggered a ministerial duty on the part of the administrative officer for the planning board, Berg, to issue the certificate of the planning board's failure to act, and resulted in the approval of the master plan.

In response, Berg interposed several arguments. First, he argued that NED lacked standing because it did not own the land it sought to develop.[9] Second, Berg maintained that the requirement that the board make a decision on the master plan within the statutory time period did not include a requirement that a written decision be issued within that period, and, therefore, the November 21, 2005 vote satisfied the planning board's statutory duty. Third, he took the position that mandamus was unavailable to NED because an administrative remedy had not been exhausted—namely, an appeal of the denial by the planning board to the Tiverton Board of Appeals.[10]

In his decision, the trial justice summarily dismissed the standing argument and proceeded to address the substantive argument on the statutory requirements and the question of exhaustion of administrative remedies. He found that, read together, § 45–23–40(e), which requires the planning board to "approve of the master plan as submitted, approve with changes and/or conditions, or deny the application,

according to the requirements of § 45–23–63" within 120 days of issuing the certificate of completeness of the master plan application, or such later time to which the applicant consents, and § 45–23–63(a), which mandates that "[a]ll records of the planning board proceedings and decisions shall be written," clearly and unambiguously require the planning board to issue a written decision within the statutory time frame. He further found that because the planning board failed to issue a written decision by the deadline, the statute imposed a mandatory duty on the administrative officer, at the request of the applicant, to issue the certificate of the planning board's failure to act.

Despite these findings, the trial justice nevertheless denied NED's mandamus petition because he concluded that, procedurally, NED was required to pursue an administrative appeal of the planning board's denial of its application to the Tiverton Board of Appeals before seeking relief in the Superior Court.

### III

### Standard of Review

A writ of mandamus is an extreme remedy that will be issued only when: (1) the petitioner has a clear legal right to the relief sought, (2) the respondent has a ministerial duty to perform the requested act without discretion to refuse, and (3) the petitioner has no adequate remedy at law. *Union Station Associates v. Rossi*, 862 A.2d 185, 193 (R.I.2004). "A ministerial function is one that is to be

---

9. The owner of the land, James J. McInnis, filed a motion to intervene in an effort to alleviate any standing issue. The trial justice denied that motion, and that ruling is not currently before this Court.

10. Berg also argued that the remedy NED sought was unavailable because it was not a corporation registered to do business in the state of Rhode Island. Prior to the trial on the mandamus petition, NED obtained the proper certificate of registration, and this argument was rendered moot.

performed by an official in a prescribed manner based on a particular set of facts 'without regard to or the exercise of his own judgment upon the propriety of the act being done.'" *Arnold v. Rhode Island Department of Labor and Training Board of Review,* 822 A.2d 164, 167 (R.I.2003) (quoting *Beacon Restaurant v. Adamo,* 103 R.I. 698, 703, 241 A.2d 291, 294 (1968)). "Once these prerequisites have been shown, it is within the sound discretion of the Superior Court justice to ultimately issue the writ." *Martone v. Johnston School Committee,* 824 A.2d 426, 429 (R.I. 2003). The existence of unexhausted administrative remedies may serve to prevent the issuance of a writ of mandamus. *See Krivitsky v. Town of Westerly,* 849 A.2d 359, 363 (R.I.2004) (availability of *de novo* hearing before town council of town manager's refusal to issue a license rendered mandamus remedy unavailable). Furthermore, when discerning the meaning of a statute, we consistently have stated that we give the words of the statute their plain and ordinary meaning. *Pastore v. Samson,* 900 A.2d 1067, 1078 (R.I.2006). However, when the language of a statute is not susceptible to literal interpretation, it is ambiguous, and we must look to give meaning to the intent of the General Assembly. *Retirement Board of Employees' Retirement System of State v. DiPrete,* 845 A.2d 270, 279 (R.I.2004). "[I]t is * * * well established that, when confronted with statutory provisions that are unclear or ambiguous, this Court, * * * will exam-ine statutes in their entirety, and will 'glean the intent and purpose of the Legislature "from a consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement" of the provisions to be construed.'" *State v. DiCicco,* 707 A.2d 251, 253 n. 1 (R.I.1998) (quoting *In re Advisory to the Governor,* 668 A.2d 1246, 1248 (R.I.1996) and *Algiere v. Fox,* 122 R.I. 55, 58, 404 A.2d 72, 74 (1979)). Significantly, we are free to affirm judgments of the Superior Court on grounds other than those relied on by that court, as long as the factual findings of the Superior Court support those grounds. *DeSimone Electric, Inc. v. CMG, Inc.,* 901 A.2d 613, 620–21 (R.I.2006).

## IV

### Analysis

 On appeal, NED maintains that the trial justice erred when he denied the writ of mandamus, because the statutory scheme provided it a clear legal right to a certificate of the planning board's failure to act, that a mere ministerial duty was imposed on Berg to issue that certificate without any exercise of discretion, and that it had no adequate remedy at law to obtain the relief it sought. Berg, on the other hand, asserts that NED did not have a clear legal right to the issuance of the certificate because the planning board denied the application within the statutory time limit by voting to do so at its meeting on November 21, 2005.[11]

11. Additionally, Berg advances two alternate reasons that mandamus cannot lie. First, he contends that the statutory time clock started anew on September 29, 2005, when NED and the planning board agreed to consider a substituted plan. Second, he maintains that the doctrine of election of remedies precludes NED from seeking relief in a mandamus action because NED has filed an appeal with the Tiverton Board of Appeals to challenge the planning board's denial of the master plan application.

The election-of-remedies argument was not raised before the trial justice, and therefore it is not properly before us, and we will not address it. *Richard v. Richard,* 900 A.2d 1170, 1178 (R.I.2006) ("Our well settled raise-or-waive rule prevents us from addressing arguments not raised before the trial justice.") (quoting *State v. Mohapatra,* 880 A.2d 802, 810 (R.I.2005)).

NED argues that it is entitled to the issuance of a writ of mandamus because § 45–23–40(e) requires that the planning board take action on the master plan application "according to the requirements of § 45–23–63" by December 30, 2005; that the phrase "according to the requirements of § 45–23–63" means that the action required was the filing of a written decision with the town clerk; and that, § 45–23–40(f) obliges Berg to issue to NED a certificate of the planning board's failure to act because the written decision was not filed by December 30, 2005. NED also maintains that no adequate remedy at law exists for the relief it seeks because it has no means other than a mandamus action to compel a public official to perform a ministerial duty that he is refusing to do.

Berg, on the other hand, posits that the statutory scheme does not require a written decision be filed by the statutory deadline, but that only an action on the part of the board—in this case a vote denying the application—was necessary by that time. Additionally, Berg asks this Court to agree with the trial justice that NED has not yet exhausted its administrative remedies—via an appeal of the denial of the application— and that, therefore the petition for mandamus is improper.

For mandamus to lie, NED must show that all three conditions required for the writ to issue are met: (1) that NED has a clear legal right to the relief sought—the issuance of the certificate of the planning board's failure to act by the administrative officer, Berg; (2) that the action requested of the government official was ministerial in nature—that Berg had no discretion to withhold the certificate; and (3) that mandamus is the only means for NED to obtain the relief sought. Because we hold NED does not have a clear legal right to the issuance of the certificate, we address only that issue here.

The trial justice found that §§ 45–23–40(e), (f) and 45–23–63 clearly and unambiguously require that planning boards issue a written decision by the statutory deadline or the master plan application was approved and the certificate of the planning board's failure to act must be issued by the administrative officer. Nevertheless, he denied the writ of mandamus because he determined that NED had not exhausted its administrative remedies. Although we agree with the trial justice's conclusion that mandamus should not lie, we respectfully disagree with his interpretation of the relevant statutory provisions. Because we hold that the statutory requirements do not furnish NED with a "clear legal right" to the relief it seeks, we affirm the decision of the trial justice on grounds other than those upon which he relied.

Section 45–23–40(e) sets out the requirements for a decision of the planning board:

"*Decision.* The planning board shall, within one hundred and twenty (120) days of certification of completeness, or within a further amount of time that may be consented to by the applicant,

---

With regard to Berg's contention that the statutory time clock restarted when the substitute master plan application was submitted on September 29, 2005, we note that the minutes from that planning board meeting reveal that the planning board approved a motion that firmly established December 30, 2005, as the final date for the board to take action on the application; that Berg, in his answer to the petition, admitted that December 30, 2005, was the deadline; that no new filing fee was required for the substituted application, nor was a new number assigned to it; and finally, no new certificate of completeness ever was issued for the substituted application, which, according to §§ 45–23–40(b) & (e), is required to set the statutory time clock in motion. Accordingly, this argument is somewhat disingenuous, and we reject it.

approve of the master plan as submitted, approve with changes and/or conditions, or deny the application, according to the requirements of § 45–23–63."

Section 45–23–40(f) sets out the circumstances under which the master plan application is approved, in essence by default, and a certificate of the planning board's failure to act must be issued:

> "*Failure to act.* Failure of the planning board to act within the prescribed period constitutes approval of the master plan, and a certificate of the administrative officer as to the failure of the planning board to act within the required time and the resulting approval will be issued on request of the applicant."

Conversely, § 45–23–63 is a procedural statute entitled, "Procedure—Meetings—Votes—Decisions and records." It states, in subsection (a): "All records of the planning board proceedings and decisions shall be written and kept permanently available for public review."

When discerning the meaning of a statute, we consistently have stated that we give the words of the statute their plain and ordinary meaning. *Pastore,* 900 A.2d at 1078. However, as in this case, when the language of a statute is not susceptible to literal interpretation, it is ambiguous, and we must look to give meaning to the intent of the General Assembly. *DiPrete,* 845 A.2d at 279. Therefore, we will look at the entire statute, including the " 'nature, object, language and arrangement' " of the provisions to construe their meaning. *DiCicco,* 707 A.2d at 253 n. 1.

■ We agree with the trial justice that § 45–23–40(e) calls for a written decision approving or denying the master plan application within 120 days. We are also of the opinion that § 45–23–40(f) imposes a ministerial duty on the administrative officer, if the planning board fails to take action within 120 days, to issue a certificate of that failure to act to the applicant, and that, consequently, the master plan would be approved. We do not, however, conclude that it is clear that the "[f]ailure * * * to act within the prescribed period" described in § 45–23–40(f) incorporates the requirement that the written decision be issued within 120 days under penalty of default approval.

NED argues that the language of § 45–23–40(e) is mandatory, and therefore, because it is followed by § 45–23–40(f), the sanction of default approval found in (f) adheres to a failure to follow the mandate of (e). We previously have held, however, that statutes imposing apparently mandatory time restrictions on public officials are often directory in nature. *See Washington Highway Development, Inc. v. Bendick,* 576 A.2d 115, 117 (R.I.1990) (statute requiring DEM to issue decision within six weeks was directory and not mandatory); *Beauchesne v. David London & Co.,* 118 R.I. 651, 660, 375 A.2d 920, 924–25 (1977) (requirement that Workers' Compensation Court issue a decision within ten days was directory and not mandatory); *Providence Teachers Union v. McGovern,* 113 R.I. 169, 177, 319 A.2d 358, 363–64 (1974) (requirement that arbitration hearing begin within ten days of the appointment of the arbitration panel was directory and not mandatory). Therefore, while such statutes direct public officials to perform a duty, they often provide no sanction for failing to perform that duty.

In *Bendick,* 576 A.2d at 115, the applicable statute said that " 'the director shall make his decision on the application * * * *within a period of six weeks,*' " yet the decision was not issued in that time frame. Like NED in this case, the applicant in that action sought a writ of mandamus, contending that a failure to act within the statutory time frame estopped the DEM director from denying his application. *Id.*

However, we rejected that contention, holding that because the statute did not say that the failure to comply with the time constraints removed the director's jurisdiction to decide the matter, and because the statute contained no negative language in the event the director failed to act within the statutorily described period, we were constrained to find the statute directory as opposed to mandatory. *Id.* at 117. Therefore, we ordered the DEM director to issue his decision forthwith, but held that no consequence flowed from his failure to comply with the statutory timetable. *Id.*

In the case now before us, we are presented with a very similar situation. NED filed an application for master plan approval, and § 45–23–40(e) says that the planning board "shall within one hundred and twenty (120) days approve, approve with changes and/or conditions, or deny the application, according to the requirements of § 45–23–63." Section 45–23–63(a) requires that "all records of proceedings and decisions of the planning board shall be in writing." Thus, we are faced with two statutes, both couched in mandatory language, that, when read together, arguably seem to require a written decision within 120 days. But, significantly, § 45–23–40(e) does not sanction the failure to file a written decision.

A sanction is found, however, in the language of § 45–23–40(f). That statute says that if the planning board fails to act within the statutory time frame, the administrative officer will issue a certificate of the failure to act, which results in the approval of the master plan. NED contends that "act," as it is used in (f) can only mean "file a written decision" as required by (e). We are not persuaded by that argument.

"Act," in its plain and ordinary meaning, means "to do something." Random House Unabridged Dictionary 19 (2d ed. 1993). That definition clearly encompasses a broader scope of behavior than merely filing a written decision. In fact, in this case, the planning board clearly did do "something." On November 21, 2005, the planning board voted to deny the master plan application.

NED directs our attention to *Board of Selectmen of Pembroke v. R. & P. Realty Corp.,* 348 Mass. 120, 202 N.E.2d 409, 414 (1964), a Massachusetts case in which a similarly worded statute directed the constructive approval of a development plan because the planning board failed to file a written decision by the statutory deadline. However, there is a very significant difference between the wording of the Massachusetts statute, and the wording of the statute currently before us. The Massachusetts statute attaches a sanction to the failure of the planning board to take a "final action." *Id.* at 410. Furthermore, the sanction is found in the same section of the statute as the requirement that the decision be written. *Id.* Here, on the other hand, the mandatory section of the statute requires "action" as opposed to "final action," and the sanction is in a separate section of the statute than the requirement that a written decision be filed.

We therefore hold that § 45–23–40(e) does include a requirement that the planning board file a written decision within 120 days, and the absence of a sanction in that section renders this requirement directory as opposed to mandatory. We also hold that § 45–23–40(f) contains a mandatory requirement that the planning board act on the application within the statutory timetable, and that failure to abide by that requirement will result in the constructive approval of the master plan, and require the administrative officer to issue the certificate of the planning board's failure to act. That requirement,

however, does not encompass the requirement that a written decision be filed. In our opinion, the fact that the planning board voted to deny the application by the deadline satisfies the "action" requirement of § 45–23–40(f). Thus, because the Tiverton Planning Board fulfilled the requirements imposed on it by § 45–23–40(f), NED does not have a clear legal right to the issuance of the certificate of the planning board's failure to act, and mandamus cannot lie.

We do not believe that the Legislature intended to tacitly remove the authority of municipalities to control development within their borders when they have timely voted to deny a master plan application but failed to file a written decision within the prescribed period. Section 45–23–60 sets out the required findings that planning boards must make when reaching decisions on land development applications. Adherence to this statute constitutes drafting a substantial written decision. While § 45–23–40(e) does direct a decision to be written and filed within 120 days, imposing the sanction of approval by default for failure to meet the deadline would be overly burdensome. Furthermore, the intent of the chapter, as expressed in § 45–23–29(c)(1), (2), is to "provide all cities and towns with the ability to adequately address the present and future needs of the communities * * * and to ensure the consistency of all local development regulations * * *." Imposing the drastic sanction of the approval of an application for failing to meet the deadline for filing such a substantial written decision does not fur-

ther this goal, but instead serves to remove review from the hands of local officials by approving development projects simply because the planning board was unable to meet procedural strictures.

We are cognizant of the fact that developers who are faced with a planning board decision denying their applications cannot appeal those decisions until a written decision has been filed with the town clerk. Section 45–23–67. In this case, the board's decision was filed on January 13, 2006, within a reasonable time after the statutory time clock had expired.[12] Therefore, the acts of the planning board did not interfere with NED's right to pursue an appeal.

## V

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court, to which we remand the papers in this case.

Justice ROBINSON did not participate.

Justice GOLDBERG, concurring in part and dissenting in part.

Although I concur in the result in this case, the majority and I part company in two respects. The trial justice decided this case on the basis of New England Development, LLC's (NED) failure to exhaust its administrative and legal remedies. I agree with this holding and am of the opinion that the exhaustion doctrine serves as a bar to any relief. Thus, I

12. We note that, because § 45–23–40(e) does require a written decision to be filed, and because a written decision is required to facilitate an appeal, nothing in this opinion should be construed to bar an applicant from seeking a writ of mandamus to compel a petulant planning board to file a written decision if one is not filed in a timely fashion. *See*

*Washington Highway Development, Inc. v. Bendick,* 576 A.2d 115, 117 n. 1 (R.I.1990) ("Nothing in this opinion should be construed to deny the right of an applicant to seek mandamus relief ordering the director to decide a case within a reasonable time after the six-week period has passed.").

would not address the merits of this case and would affirm the trial justice's finding that the applicant failed to exhaust its administrative remedies.

I write separately because I do not agree that in the context of a major land development plan, a planning board is required to issue a written decision within 120 days of the certification that the application is complete; nor am I of the opinion that this provision is directory.

## Exhaustion of Remedies

The trial justice found that "[a]lthough NED's arguments on the merits may be valid, this justice finds that the developer is, at present, procedurally barred from the remedy it now seeks in Superior Court." Citing our decision in *Krivitsky v. Town of Westerly*, 849 A.2d 359, 362 (R.I. 2004) (*Krivitsky II*), the trial justice found that "the exhaustion [of remedies] doctrine is applicable in the context of those who might otherwise seek a writ of mandamus." Significantly, the trial justice noted that NED had perfected its appeal to the Tiverton Board of Appeals, thereby invoking the administrative process. He also rejected NED's argument that our holding in *Krivitsky II* was inapplicable to the facts in this case.

In *Krivitsky II*, 849 A.2d at 363, we vacated an order of mandamus upon our determination that the plaintiff failed to exhaust its administrative appeals to various town officials. We also noted that if the license ultimately was denied by the town, the plaintiff could seek review in this Court by way of writ of certiorari. *Id.* I am of the opinion that when faced with an application for writ of mandamus, the trial justice's first order of business should be an exhaustion analysis.

Although G.L. 1956 § 45–23–40(f) provides that the "[f]ailure of the planning board to act [within 120 days] constitutes approval of the master plan" and that "the resulting approval will be issued on request of the applicant," I am not convinced that this provision gives rise to the extraordinary remedy of mandamus; nor does it excuse the requirement that an applicant exhaust its administrative remedies. Section 45–23–67 provides for a right of appeal to the Tiverton Board of Appeals, a remedy that NED has chosen to pursue. Accordingly, I would decide this case on exhaustion grounds.

I also respectfully dissent from the majority's conclusion "that § 45–23–40(e) calls for a written decision approving or denying the master plan application within 120 days" of the certification that the application is complete.

## Statutory Construction

To reach the conclusion that § 45–23–40(e) requires a written decision within 120 days, three separate sections of chapter 23 of title 45 must be examined.[13] I am of the opinion that this statutory scheme is unclear and ambiguous, necessitating an application of the usual rules of statutory construction.

When the language of a statute is free from ambiguity and capable of only one interpretation, there is no room for statutory construction and "this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I.1996). "When a statute is ambiguous, however, we must apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." *Harvard Pilgrim Health Care of New England, Inc. v. Rossi*, 847 A.2d 286, 290 (R.I.2004) (citing *Direct Action for*

13. *See* G.L. 1956 § 45–23–40(e), (f), and § 45–23–63.

*Rights and Equality v. Gannon,* 819 A.2d 651, 659 (R.I.2003)). This Court will not construe a statute that contains ambiguous language to reach a result "that is contradictory to or inconsistent with the evident purposes of the [enactment]." *Carrillo v. Rohrer,* 448 A.2d 1282, 1284 (R.I.1982).

When it enacted the Rhode Island Land Development and Subdivision Review Enabling Act of 1992, the Legislature directed that all municipalities adopt procedures "intended to provide thorough, orderly, and expeditious processing of development project applications." Section 45–23–26(b). The General Assembly also recognized that a municipality's responsibility to regulate land development has "increased in complexity, and expanded to include additional areas of concern" § 45–23–29(b)(3); and that not all proposals "are sufficiently reviewed prior to recording or construction, resulting in unwarranted" impacts upon the municipality and private individuals. Section 45–23–29(b)(5). A major land development project is a complex proposal that consists of a pre-application meeting, § 45–23–35; followed by "three stages of review, master plan, preliminary plan and final plan * * *. Also required is a public informational meeting and a public meeting" (upon seven days public notice). Section 45–23–39(b). In addition, input must be solicited from numerous agencies, ranging from the police and fire departments to adjacent communities and environmental stakeholders. *See* § 45–23–40(a)(3).

Notably, from the time the application is certified as complete, § 45–23–40(e) affords the planning board 120 days to "approve * * * approve with changes and/or conditions, or deny the application." The

requirement that this decision must be embodied in a separate writing, (a point about which I am not convinced),[14] means that the planning board, consistent with its operating procedures and state law regulating open meetings,[15] has significantly less than 120 days to review and pass upon this major development project. I do not believe that the General Assembly intended to provide for less than 120 days for the planning board to decide these applications.

Because § 45–23–40(f) provides that the planning board's failure *to act* within 120 days amounts to a default, I am of the opinion that the board must, within 120 days, vote the application up or down and that a written decision, consistent with the planning board's operating procedures, must be provided within a reasonable time. Any other reading of these subsections, in my opinion, results in a markedly abbreviated period of review for these complex development proposals.

Finally, I cannot agree with the majority's conclusion that the 120–day period for a written decision is directory, because the statute sets forth mandatory compliance parameters and has heavy consequences for the board's failure to comply with its provisions. *See* § 45–23–40(e). This language convinces me that the decisional time constraints are mandatory, but that they do not require a written decision. Consequently, I cannot agree with the majority's conclusions.

**14.** I am of the opinion that the minutes of the planning board that are "written and kept permanently available for public review" satisfies the writing requirement set forth in § 45–23–63(a).

**15.** General Laws 1956 chapter 46 of title 42, "Open Meetings" requires that any discussions of the business of the Tiverton Planning Board occur at a regular or special meeting of the planning board, for which proper notice has been given and that is open to the public.